In re George E. SULLIVAN.

No. 57289.

Supreme Court of Missouri, En Banc.

May 14, 1973.

**330**

Paul F. Niedner, Niedner, Moerschel, Nack & Ahlheim, St. Charles, for respondent.

Robert C. Smith, Smith, Lewis & Rogers, Columbia, for informants.

HOLMAN, Judge.

The members of the Circuit Bar Committee of the 11th Circuit (hereinafter referred to as "Informants") instituted this proceeding by the filing of an information in this court. Therein they charged George E. Sullivan (hereinafter called respondent) with professional misconduct and sought an order removing him from the practice of law in this state. Respondent is a duly licensed attorney in this state and maintains an office in O'Fallon, St. Charles County, Missouri.

The information charged that respondent violated Rule 4 in that he "committed acts of professional misconduct in his employment to represent Duncan Barrie Macleod, Jr., in St. Charles County, Missouri, between dates of November 19, 1969, and January 5, 1970, in that he made a charge of One Thousand Dollars ($1,000.00) for legal services to the said Duncan Barrie Macleod, Jr., which sum was collected and retained by him when in fact the legal services were not rendered and that he further failed and arbitrarily refused to account for said fee and such services, although requested on behalf of his client to do so." Respondent in his answer admitted that he received the fee but denied the other allegations in the information.

This court appointed Hon. Ray Weightman as Special Commissioner and authorized him to hold hearings, report the evidence taken, and to make findings of fact and conclusions of law. Judge Weightman held a hearing in July 1972. At that hearing informants offered in evidence (and the Commissioner admitted) transcripts of the evidence taken at three hearings they had held before filing the information herein. Also admitted were portions of the deposition of respondent offered as admissions against interest (respondent later offered all of that deposition). Eighteen exhibits of a documentary nature were also

offered by informants and admitted. Respondent offered a number of witnesses whose testimony is hereinafter discussed.

The evidence supports the following statement of facts: Respondent graduated from St. Louis University Law School in 1950. He worked as a claims manager for insurance companies until 1956, and practiced law in St. Louis from that time until 1961 when he opened an office in O'Fallon. He developed a practice which was approximately one third criminal, one third representing plaintiffs in personal injury suits, and one third miscellaneous. The evidence indicated very clearly that he represented more defendants in criminal cases than any other lawyer in St. Charles County and in some of the adjoining counties. There was also a great deal of evidence that he was a very capable criminal lawyer.

Andrew McColloch testified that he was Prosecuting Attorney of St. Charles County in November 1969. He stated that Barrie Macleod, Jr. (an A.W.O.L. soldier) was one of a number of defendants who were arrested in connection with the death of one Dennis Dashley; that there had been a heroin party in St. Louis County where Macleod had given Dashley a shot of heroin; that apparently it was an overdose and Dashley became unconscious and was taken to St. Charles County where efforts were made to revive him, but he died. Thereafter, the body was returned to St. Louis County and placed in an abandoned building. Another one of the A.W.O.L. soldiers died under similar circumstances. As a result of the situation, charges of manslaughter and illegally transporting a dead body were filed in St. Charles County against Macleod and the two other surviving A.W.O.L. soldiers. At the time the charges were filed there was some indication that some of the group had held Dashley and the heroin had been injected against his will. Further investigation, however, revealed that Dashley was afraid of a needle and had asked his friends to administer the drug. McColloch testified

that he eventually concluded that he had made a mistake in filing charges against these defendants and that on November 21, 1969, at about 1:30 p. m., he voluntarily dismissed all of the charges; that he was never aware that respondent represented Macleod and since he did not know of the representation he, of course, was not influenced thereby in dismissing the charges.

R. Jere Bloche testified that he is an attorney practicing in Philadelphia, Pennsylvania; that Duncan B. Macleod, Sr., was his client; that early in November 1969 Mr. Macleod telephoned him and advised that he had received a phone call from his son who was incarcerated in the jail at St. Charles, Missouri; that he advised Mr. Macleod that he would attempt to learn the facts; that on November 13, he telephoned Mr. McColloch and was told of the charges against Barrie; that he was then authorized by Macleod, Sr., to employ counsel in Missouri to represent Barrie; that several attorneys had been recommended to him, including respondent, and that on November 19 he called respondent and told him they were desirous of obtaining representation for Barrie; that respondent agreed to serve and suggested that he should receive a fee of $1,000 and would not enter into the case until he was assured that Macleod, Sr., had made payment; that they finally agreed that $1,500 would be collected from Macleod, Sr., with $500 being retained by the witness, and $1,000 to be sent to respondent. He stated that he received the money from Macleod and on November 21 called respondent and advised that he had the money, and to proceed with all dispatch in representing Barrie; that on November 24, he mailed a letter enclosing a check payable to respondent for the fee agreed upon, which recited that it was "Retainer for representation of Duncan Barrie Macleod, Jr."

Mr. Bloche further testified that he heard nothing further from respondent; that on December 4 he received a call from Macleod, Sr., advising that he had just learned that the charges against his

son had been dropped on November 20, and that his son had been discharged from the county jail; that Mr. Macleod said he had obtained this information by calling respondent's office and talking with his associate, Mr. Duggan; that he attempted to call respondent that day, and spoke to respondent's secretary who advised him that respondent was not in the office at the time but would call him when he returned; that he then reviewed the file and came to the realization that the charges against Barrie had been dismissed the day before respondent had been formally retained; that he then attempted, unsuccessfully, to stop payment on the check. He further stated that respondent did not return his call, and that on December 11 he received a letter from respondent, dated December 9, advising him that the charges had been dismissed; that on that same day he wrote respondent a letter advising that Mr. Macleod was quite disturbed about the situation in that he had learned that respondent had performed very little, if any, services in representing Barrie and requested that respondent send a detailed account as to the services rendered. He stated that he received no answer from respondent and therefore, on December 19, sent a telegram to him making a similar request; that on January 6, 1970, having heard nothing from respondent he wrote another letter advising that since he had received no accounting, he was demanding the return of the $1,000. On January 7, he received a letter from respondent, dated January 5, in which he said, in part:

"I do not know how you people practice law in Pennsylvania but in Missouri we go by *results*. * * * You called me asking me to represent this young man who was charged with manslaughter and unlawful handling of a dead body plus perhaps something else in St. Louis County and asked me to do what I could. * * * Afterwards I talked to some people and lo and behold the charges were all dropped. I have no intention of accounting to you as to what I

did or what I did not do. I will stand on the fact that this young man did not have to stand trial for anything except his obligation to the Armed Services."

Mr. Bloche stated that he had heard nothing further from respondent since receiving that letter; that he returned $300 of the $500 he had received to Mr. Macleod.

Mr. Macleod also testified but the main facts in his testimony are related in the testimony of Mr. Bloche.

Respondent testified concerning his conversation with Bloche on November 19, but it was his version that he was to proceed immediately to represent Barrie as there was a preliminary hearing scheduled for the next afternoon; that on the afternoon of the 19th he went to the magistrate office and examined the file; that thereafter he drove to Ferguson, Missouri, where he spent about two hours at the police station talking with the officer in charge and examining the records; that that evening, after dinner, he went to his office and spent about two hours researching the law; that the next morning he was in magistrate court on other matters and mentioned to Ervin Davis, an assistant prosecuting attorney, that he was representing Barrie; that later that morning he saw Davis again and was advised that the charges against Barrie and the other defendants were going to be dismissed; that he had never contacted Barrie and that afternoon, after verifying that the charges had been dismissed, he went to the jail to see Barrie but that he had already been turned over to the military authorities. He further stated that he did not have a telephone conversation with Bloche on November 21; that since the telephone bill in evidence indicated a call to his number on that day, Bloche must have talked with his secretary as he was not in the office all that day; that he did not notify Macleod, Sr., or Bloche of the dismissal of the charges because he thought that Barrie would communicate with his father, and he also wanted to be sure that the charges would not be refiled,

and that charges would not be filed in St. Louis County; that he dictated a letter to Bloche on December 4 advising as to what occurred, and enclosed a photostatic copy of the magistrate court files, but that his secretary did not get the letter typed until December 9; that he next wrote Bloche on January 5, advising him that he had no intention of accounting as to his services; that "it wasn't a very nice letter"; that he had thought his entry into the case "had something to do with its being dismissed."

Respondent, in his testimony, apparently took the position that the $1,000 was paid to him to take the case, and that it was earned as soon as he went to work on the case, although he did testify that "if I had done nothing I would have returned the $1,000 because I was not hired for that reason. I was hired to go out and do something, which I did."

Respondent did not testify at any of the hearings before the Bar Committee. He was present and represented by an attorney, whom he later discharged. His present attorney represented him before the Special Commissioner. He stated that his reason for not testifying was that he had become convinced that the Committee was prejudiced against him when most of the Committee took Mr. Bloche and Mr. Macleod to lunch following the hearing at which they testified. However, shortly prior to the hearing before the Special Commissioner he indicated that he was no longer of the opinion that the Committee had acted improperly, and appeared voluntarily in the office of the attorney for the Committee and submitted to having his deposition taken. He also testified to some additional matters at the hearing before the Special Commissioner.

Quite a number of attorneys from the Bar of St. Charles County and some of the adjoining counties testified in behalf of respondent. They stated that he was a competent attorney and bore a good reputation for honesty and "general propriety of living." Some of them were asked, by hypo-

thetical questions, for their opinions as to whether respondent's retainer fee had been earned. Most of them expressed the opinion that his fee had been earned as soon as he was employed. However, at least one attorney expressed the opinion that if respondent did not render any services he should not have charged anything.

Ervin Davis, who was an assistant prosecuting attorney in November 1969, testified that he investigated the Macleod case but did not file the charges or dismiss them. He stated that he did not recall any conversation with respondent in regard to the case but he would not testify that he did not have such a conversation.

At the conclusion of the hearing before Judge Weightman the following stipulation was filed:

"The undersigned members of the 11th Judicial Circuit Bar Committee constituting a majority of said Committee, and the undersigned respondent, George E. Sullivan, do hereby stipulate and agree as follows:

"1. It is agreed that the facts in evidence are in dispute as to the extent and nature of the employment and as to whether legal services were or were not rendered, and if rendered, as to the nature and extent of said services.

"2. That the respondent admits his failure to properly report to his client the services rendered although requested to do so.

"3. That the respondent admits his indiscretion in not offering evidence on his behalf at the formal hearing before the 11th Judicial Circuit Bar Committee and that such indiscretion has resulted in additional expenses being incurred in connection with the hearing of this matter, and the respondent does hereby agree to pay all of the costs which may be taxed as costs in this action.

"4. That the respondent does hereby express his willingness to submit the

question of the disposition of the fee collected in this cause to a three-man Board of Arbitration composed of practicing attorneys and to comply with the determination of such Board as to the equities between respondent and respondent's client.

"5. That in view of the foregoing, the majority of the 11th Judicial Circuit Bar Committee named below recommend that the appropriate disciplinary action involving the respondent be limited to a reprimand."

The Special Commissioner in his report, after discussing the evidence and contentions of the parties, made the following findings and conclusions:

"Your Commissioner concludes that respondent rendered no service, that the $1,000 fee was not justifiable and the parties in the stipulation have agreed that respondent did not act in propriety in reporting to his correspondent attorney and responding to the latter's inquiry. The respondent failed to act in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession. (Canon 9–2 EC, V.A.M.R.) Respondent failed to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust of his client and of the public. In view of respondent's conduct and attitude in this case, the respondent George Sullivan should be disciplined, and costs taxed accordingly."

 We have concluded that respondent was guilty of improper conduct in connection with the Macleod matter and that he should be disciplined. And we will consider the extent of discipline required in this case before we discuss our reasons for the foregoing conclusion. This because proof of less serious conduct is required to warrant a reprimand than for suspension or disbarment, and our decision in that regard will limit the issues we are

called upon to decide. It has been said that "[d]iscipline of an attorney may be effected by disbarment, suspension, or censure, sometimes called reprimand, which may be public or private. Disbarment is the extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards. To disbar it should be clear that he is one who should never be at the bar; otherwise suspension is preferable. For isolated acts censure, public or private, is more appropriate. * * * A judgment in a disciplinary proceeding must be just to the public and must be designed to correct any antisocial tendency on the part of the attorney, as well as to deter others who might tend to engage in like violations; it must be fair to the attorney, but the duty of the court to society is paramount." 7 Am.Jur. 2d, Attorneys at Law, § 18, pp. 52, 53.

 It will be noted that in the stipulation filed, the Circuit Committee recommended that the disciplinary action be limited to a reprimand. While we are not bound by the stipulation, our study of the transcript has convinced us that a reprimand will be sufficient to accomplish the purposes desired in this proceeding. Public censure and the payment of the expenses involved should be sufficient to cause respondent to desist from future misconduct, and the example should deter other attorneys from similar action.

In our determination of the merits of this case we have concluded that we need not decide whether or not respondent rendered the services (about six hours' work) related in his testimony. We will assume (but do not decide) that such were performed. We also have concluded that we need not decide the technical meaning of the word "retainer" as used in this case. Our research has disclosed that that apparently simple word has many different meanings, depending entirely upon the particular agreement in each case.

■ It is our view that respondent was guilty of misconduct in at least the following respects, i.e., failure, under the circumstances, to notify his client of the dismissal of the charges, and his failure and refusal after repeated requests to make full disclosure to his client as to the items of services rendered by him. In connection with those matters, we call attention to S.Ct. Rule 4 EC 9–2, V.A.M.R., which reads, in part, as follows:

"Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer. * * * In order to avoid misunderstandings and hence to maintain confidence, a lawyer should fully and promptly inform his client of material developments in the matters being handled for the client. * * * When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession."

While we recognize that said rule was not in effect in November 1969, we think it is appropriate to quote it because it is simply a statement of the duty of an attorney as it has been understood by attorneys throughout the history of the legal profession. It has long been an accepted rule of conduct that an attorney should be ready and willing to make full disclosure to his client at any time concerning his actions in the conduct of a case and all developments therein.

We recognize that in many instances the failure to advise a client concerning developments would be characterized as simple neglect. In this case, however, we think it was designed for personal motives and constituted professional misconduct. According to his own testimony, respondent did not make any effort to notify Bloche or Macleod, Sr., of the dismissals until December 4, which was two weeks thereafter. This omission can only be described as cruel, when respondent must have known that Barrie's parents were greatly distressed and concerned as to what was to happen to their son in those cases. Respondent's excuses that he supposed Barrie would notify his parents, and that he desired to wait, for some undisclosed period, to see if the charges would be refiled (or other charges filed) are unacceptable.

Respondent at most had done about six hours' work and he knew, or reasonably should have known, that his representation of Barrie had nothing to do with the dismissal of the charges. We think respondent recognized immediately that if there were a full disclosure of the facts to his client, he would likely take the position that the charge was grossly excessive and would demand the return of a substantial portion of the money paid. Respondent likely reasoned that delay in notifying his client of the dismissals might leave the impression that more work had been done. And, it may not be a coincidence that the day he testified that he had dictated a letter to Bloche advising that the cases had been dismissed was the same day that Macleod, Sr., had already obtained that information from Mr. Duggan, respondent's associate.

As we have indicated, we think respondent's failure to reply to repeated requests for an accounting as to services rendered was motivated by a consciousness that he had performed very slight services and that he was reluctant to disclose that fact. Also, we think his letter of January 7 was highly improper not only because of his rude refusal to account, but because he represented that his influence brought about the dismissals when, as we have said, he knew or reasonably should have known that such was not the case.

It was respondent's duty to deal fairly and with the utmost good faith with Bloche and, through him, with their client. In our judgment he has failed to measure up to that elementary standard of ethical

**336**

professional conduct. As indicated, we conclude that his actions and omissions heretofore detailed constituted unethical and improper conduct and that such requires a reprimand.

Respondent has briefed the contention that his dealings with his client as heretofore described, and his behavior in failing to testify before the Committee, should not be a basis for discipline. He cites In re Speiser, 294 S.W.2d 656 (Mo.App.1956), In re Kaemmerer, 178 S.W.2d 474 (Mo.App. 1944), and In re Mills, 462 S.W.2d 700 (Mo.1971). The foregoing discussion will indicate our view that this contention is without merit and we consider the cases cited as not rendering support thereto. Although respondent may have had a tenuous excuse for his failure to testify before the Committee, such failure indicated a continuing reluctance on his part to explain his actions in the Macleod matter.

For the reasons heretofore specified, it is the judgment of this court that respondent should be, and he hereby is, publicly reproved, censured, and reprimanded for unprofessional conduct. It is further ordered that the costs in this proceeding be assessed against him.

FINCH, C. J., and SEILER, MORGAN and HENLEY, JJ., concur.

DONNELLY, J., concurs in result in separate concurring opinion filed.

BARDGETT, J., concurs in result and concurs in separate concurring opinion of DONNELLY, J.

DONNELLY, Judge (concurring).

I concur in the imposition of a reprimand, but would limit our findings and conclusions to those stipulated to by the 11th Judicial Circuit Bar Committee and Respondent at the conclusion of the hearing before Judge Weightman.