**In re Thomas P. McBRIDE, Respondent.**

No. 78457.

Supreme Court of Missouri,
En Banc.

Feb. 25, 1997.

---

John E. Howe, Chief Disciplinary Counsel, Sam S. Phillips, Staff Counsel, Jefferson City, for Informant.

Ronald R. Holliday, St. Joseph, for Respondent.

WHITE, Judge.

This is a disciplinary proceeding instituted by the Chief Disciplinary Counsel (CDC) against Thomas P. McBride. The CDC re-

---

quests that Mr. McBride be disciplined for his conviction for second degree assault. This Court appointed Honorable Donald Barnes, Judge of the Eighteenth Judicial Circuit, as Master. The Master conducted a hearing, made findings of fact and conclusions of law, and recommended that Mr. McBride be disciplined by public reprimand. We adopt the Master's recommendation.

## I. Background

Mr. McBride was charged with two counts of assault in the first degree, two counts of assault in the second degree, and two counts of armed criminal action for his conduct in confronting three men on his property on February 20, 1995. Mr. McBride was armed with a loaded .380 caliber automatic pistol. During the course of the confrontation, Mr. McBride fired three or four times and two of the men were wounded. The jury acquitted Mr. McBride of five felony counts and found him guilty of one count of assault in the second degree. The jury assessed Mr. McBride's punishment at "no punishment but a fine, in an amount to be determined by the Court." On September 15, 1995, the court suspended imposition of sentence and placed Mr. McBride on probation for five years with the following conditions: that he not have any firearms in his possession outside of his home, that he pay restitution in the amount of $4,000.00 towards the cost of medical services rendered to one of the men, and that he provide legal assistance to victims of abuse at the local YWCA. The CDC then brought this disciplinary action against Mr. McBride.

## II. Final Discipline for a Suspended Imposition of Sentence

■ The CDC seeks discipline pursuant to Rule 5.20, sections (a) and (c).[1] Rule 5.20(a) permits suspension of an attorney convicted of a felony pending the final discipline imposed by this Court. Section (a) states:

> Upon the filing of an information by the chief disciplinary counsel that a lawyer

admitted to practice in Missouri has ... been found guilty of [ ] any felony of this state ... whether sentence is imposed or not, this Court shall cause to be served on the lawyer an order to show cause why the lawyer should not be suspended from the practice of law pending the final disposition of any disciplinary proceeding based upon such ... finding.

The CDC filed its information on October 24, 1995. The information was combined with a motion for *final* discipline alleging that Mr. McBride's conviction was already finally disposed as no appeal can be taken from a suspended imposition of sentence. This Court ordered Mr. McBride to show cause "why his license to practice law should not be disciplined based upon his conviction." Mr. McBride timely responded and this Court appointed a master to take testimony. This Court did not suspend Mr. McBride pending its decision as to final discipline.

Rule 5.21(c) states the procedure for final discipline:

> When the case in which the ... finding was entered is *finally disposed,* the chief disciplinary counsel shall file with this Court a motion to discipline, together with a certified copy of the judgment, whereupon the lawyer shall be subject to discipline by this Court without the requirement of any other proceeding.[2]

The reference to the "finding" in section (c) relates back to section (a), when "a lawyer admitted to practice in Missouri has ... been found guilty of [ ] any felony of this state ... *whether sentence is imposed or not.*"[3] When the emphasized language is considered in the context of the "finally disposed" language in section (c), there at first seems to be an inconsistency, as a suspended imposition of sentence (SIS) is not ordinarily considered a final disposition.[4]

The implications of an SIS are different for purposes of attorney discipline than they are

---

1. All references to rules are from Supreme Court Rules (1995). Rules 5.20 and 5.21 have since been renumbered Rules 5.21 and 5.22 respectively.

2. (emphasis added).

3. (emphasis added).

4. *Yale v. City of Independence,* 846 S.W.2d 193, 194 (Mo. banc 1993).

for a criminal appeal, however.[5] The immediate purpose of these proceedings is to inquire into an attorney's fitness to practice law.[6] The ultimate objective is not to punish the attorney but to protect the public and maintain the integrity of the profession and the courts.[7]

■ Reading sections (a) and (c) together,[8] we hold that an SIS is a final disposition for purposes of attorney discipline. The rules provide for expedited suspension when attorneys are found guilty of felonies. When we elect not to suspend the attorney pending final discipline, we need not postpone our decision as to final discipline. Whether the attorney successfully completes his probation or he violates its terms and his sentence is imposed, the conduct of which he was found guilty warrants an evaluation as to his fitness to currently practice law. Final discipline is appropriate at this time.

### III. Appropriate Sanction

■ Mr. McBride may not relitigate his guilt or his defense of self-defense in this proceeding.[9] In determining the appropriate disciplinary action for committing this felony, however, we may consider the circumstances behind his conduct and other mitigating or aggravating factors.[10]

### A. February 10, 1995

Although the eyewitnesses to the incident did not testify before the Master, Mr. McBride and the CDC filed a stipulation with this Court based on the sworn testimony of the eyewitnesses at trial. The following summary of events consists of the uncontested facts in the stipulation.

Mr. McBride is part owner of a tract of land on which a mobile home court and a tavern are located. Mr. McBride and his family reside in one of the mobile homes. He also acts as a landlord of the mobile home court. Mr. McBride does not own or manage the tavern. Mr. McBride heard knocking on his door around 10:40 p.m. the night in question. It was from one of his tenants, a single mother living in the mobile home nearest the tavern but separated from it by a wooded space. She told Mr. McBride that there was a man standing in the wooded space who appeared to be staring into her window. Mr. McBride told her to call the sheriff's office. (Two deputies were dispatched to the location at 10:51 p.m. in response to a report of prowlers.) Mr. McBride took his loaded automatic pistol, an extra clip of ammunition, and a flashlight with him to investigate. He encountered a man and advised him that he owned the property on which the man was standing. Another man emerged through the trees from the tavern parking lot and Mr. McBride told the two men to return to the parking lot and to wait for the sheriff. The two men returned to the parking lot. Mr. McBride followed them and again told them to wait for the sheriff. A third man, Carl VanVolkenburgh, approached Mr. McBride in the parking lot. He testified that he tackled Mr. McBride. He also admitted that he never saw Mr. McBride take out his gun. A struggle ensued and at least three shots were fired. Three bullets hit Mr. VanVolk-

**5.** *See In re Shunk,* 847 S.W.2d 789, 790 (Mo. banc 1993). *Shunk* addressed a similar issue concerning an earlier version of Rule 5.20. The rule interpreted in *Shunk* used the words "conviction" and "affirmed on appeal" where the 1995 rules use "found guilty" and "finally disposed." In *Shunk* the attorney in question had pleaded guilty in a Texas court to the felony of knowingly and intentionally possessing cocaine. The court deferred the "finding of guilt and further adjudication." *Shunk* held that although the word "conviction" does not ordinarily include a SIS, a deferred sentence is considered a conviction for the purposes of attorney discipline.

**6.** *In re Randolph,* 347 S.W.2d 91, 109 (Mo. banc 1961).

**7.** *Id.*

**8.** "In the construction of the rules of court we consider all of the rules in relation to the subject with which they treat, and we look at them with regard for the purpose for which they were adopted." *St. Louis Realty Development Corp. v. Gordon,* 354 S.W.2d 324, 326 (Mo.App.1962) (citing 21 C.J.S. Courts § 177).

**9.** *In re Lurkins,* 374 S.W.2d 67, 68 (Mo. banc 1964).

**10.** *Id;* ABA STDS. IMP. LAW. SANCT. Standards 3.0, 9.1, 9.2, 9.3 (1986).

enburgh. One of those bullets passed through Mr. VanVolkenburgh and injured one of the other men. Upon arriving at the scene, one of the deputies noted that Mr. McBride was bleeding in the middle of his forehead, he had a scratch on the side of his head, he was covered in mud, he was missing a shoe, and the buttons had been torn from his shirt.

Two hours after the incident, Mr. VanVolkenburgh had a blood alcohol level of .26. The other man who was injured had a blood alcohol level of .32. The third man was not tested, but admitted that all three men had been drinking since around 2 p.m. after they had finished work for the day, and that he was "probably drunk." Mr. McBride voluntarily submitted to a blood test. His blood alcohol level was .00 two hours after the incident.

Mr. McBride was fifty years old, 5'6", and 160 pounds at the time of the incident. Mr. VanVolkenburgh was thirty-six years old, 5'8", and 195 pounds.

The jury found that as to Mr. VanVolkenburgh, Mr. McBride recklessly caused him serious physical injury. The jury acquitted Mr. McBride as to the other man's injury and the armed criminal action charges.

## B. Aggravating and Mitigating Factors

Although we are not bound by the Master's findings, after a *de novo* review of the record, we adopt the following findings of the Master as to the aggravating and mitigating factors present in this case.[11]

### 1. Aggravating Factors

The record shows that Mr. McBride, after determining his tenant was in no immediate

---

11. *In re Littleton*, 719 S.W.2d 772, 775 (Mo. banc 1986).

12. The CDC is apparently referring to Mr. McBride's insistence that despite his acceptance of the SIS, he feels there are legitimate, appealable issues concerning his defense of self-defense and how the jury was instructed on the defense.

13. Q: Now, are you sorry about what happened, Mr. McBride, are you sorry about this incident that happened on February 20th of 1995?

   A: Yeah, it's been a disaster.
   Q: Why?

---

danger, and after convincing the men to return to the parking lot, then attempted to detain the men until the sheriff arrived, "engaging in conduct which under the circumstances, might incite or invite reckless conduct by the three men, posing a danger to the public in the area or to himself." After considering this evidence and Mr. McBride's defense, a jury of his peers found him guilty of a felony. The integrity of the profession demands that he be professionally sanctioned for his unlawful conduct. Additionally, the CDC is concerned that Mr. McBride has failed to acknowledge that his conduct was criminal, which reflects adversely upon his sense of judgment.[12]

### 2. Mitigating Factors

Mr. McBride has fully cooperated with this investigation. Mr. McBride's offense does not reflect adversely on his honesty. He did not betray the trust or confidence of any client, nor did he jeopardize the representation of his clients before any court. He has not demonstrated a flagrant or cavalier disregard for the law. The record shows that the incident occurred late at night on Mr. McBride's property while he was responding to a tenant's concern about a trespasser. The record also shows that Mr. McBride has practiced for twenty years in positions of public trust, has never before been the subject of a disciplinary proceeding, and enjoys a good reputation among his clients, colleagues, the courts before whom he practices, and the general public. Finally, though Mr. McBride exhibited frustration over the outcome of the trial at the hearing before the Master, he also demonstrated remorse.[13]

A: The best you could characterize it is it's been a tragedy. For me I've had sleepless nights. I've had to worry about it, I've lost a lot of money. My wife and I[sic] standard of living has gone down. I haven't been able to help my daughter in college as much as I hoped to. On the other side, Mr. VanVolkenburgh was injured rather severely, very severely, and nearly died. He recovered, but he spent about a month, I think, in the hospital. Certainly there was a great deal of pain involved. His family was concerned about him. He's got medical bills now. Even the prosecutor didn't come out well. He's almost

## C. Discipline under Rule 5.21

We do not excuse or condone Mr. McBride's conduct. An attorney has the obligation to set an example of strict adherence to the law.[14] The CDC contends that Mr. McBride's conviction demonstrates his lack of good judgment, "an essential aspect of an attorney's practice," and recommends indefinite suspension or disbarment. Rule 5.21(c) authorizes the sanctions of public reprimand, suspension, and disbarment.

The sanction of disbarment is reserved for those cases in which it is clear that respondent should not be allowed to practice law.[15] The evidence before us does not demonstrate that Mr. McBride is unfit to practice law. The evidence before us is that the jury found that while struggling with a man who attacked him on his property, Mr. McBride recklessly caused that man serious injury.

According to the *ABA Standards for Imposing Discipline,* "[s]uspension is generally appropriate when a lawyer *knowingly* engages in criminal conduct ... that seriously adversely reflects on the lawyer's fitness to practice." [16] This is a general standard and applies absent aggravating and mitigating circumstances.[17] Therefore, reckless criminal conduct can warrant suspension should the circumstances justify an increase in the degree of sanction.[18]

A public reprimand is appropriate "only where the attorney's breach of discipline is an isolated act ... and does not involve dishonest, fraudulent, or deceitful conduct on the part of the attorney." [19] Where a public reprimand is insufficient to protect the integrity of the profession, however, suspension is preferred.[20]

We find that the conduct for which Mr. McBride was convicted was an isolated act that did not involve dishonesty, fraud, or deceit. After considering the aggravating and mitigating circumstances present in this case, we do not find that the circumstances behind Mr. McBride's reckless conduct warrant suspension. Mr. McBride poses no threat to his clients or the public at large, and it would not serve the public or the profession to suspend his ability to provide competent legal service. Mr. McBride's license to practice law should be disciplined, however. We find public reprimand to be the appropriate sanction.

PRICE, LIMBAUGH, and ROBERTSON, JJ., concur.

COVINGTON, J., concurs in part and dissents in part in separate opinion filed.

HOLSTEIN, C.J., and BENTON, J., concur in opinion of COVINGTON, J.

COVINGTON, Judge, concurring in part and dissenting in part.

I concur with the majority that respondent is subject to discipline under Rule 5.20 and is subject at this time to final discipline. I dissent from the majority's finding that the appropriate sanction is a public reprimand. Rule 5.20(a) presumes suspension from the practice of law after a lawyer has been found guilty of any felony of this state. This is not to say that this Court cannot and should not exercise its discretion in ordering final discipline pursuant to Rule 5.20(c), but the burden is clearly on the respondent to show why he should not be suspended or disbarred. I do not believe that the respondent has met his burden.

**14.** "I do solemnly swear that I will ... at all times conduct myself with dignity becoming of an officer of the court in which I appear." Rule 8.11.

**15.** *Littleton,* 719 S.W.2d at 777.

**16.** Standard 5.12 (emphasis added); *In re Warren,* 888 S.W.2d 334, 337 (Mo. banc 1994).

**17.** ABA Stds. Imp. Law. Sanct. Standard 5.1.

**18.** *Id.* at Standard 9.2.

**19.** *Littleton,* 719 S.W.2d at 777 (citing *In re Sullivan,* 494 S.W.2d 329, 334 (Mo. banc 1973)).

**20.** *Id.*

ostracized from the local bar over this whole thing; nobody came out ahead. It's tragic any way you want to look at it, nothing good came out of this for anybody that I know of.

A: ... It's not anything that I'm proud of certainly.

It is long and well established that the purpose of discipline is not to punish the lawyer but to protect the public and to preserve the integrity of the legal profession. *In re Frank*, 885 S.W.2d 328, 333 (Mo. banc 1994). To preserve the integrity of the legal profession means, in part, to make decisions that allow the public a sense of confidence in the administration of justice, including a sense of confidence in those who are officers of the court. Members of the profession have an obligation to set an example of strict adherence to lawful conduct, as well as to acknowledge that conduct in a criminal incident is, in fact, criminal. As the majority acknowledges, respondent was not only convicted of assault in the second degree after having intentionally fired at least two shots into another person's stomach, but he also exercised extraordinarily poor judgment. After determining his tenant was in no immediate danger, he attempted to dissuade VanVolkenburgh and his two companions from leaving the area, as they were apparently willing to do, and engaged in conduct that under the circumstances might incite or invite reckless conduct by the three men. Furthermore, respondent continues to urge that his conduct was justifiable as self-defense.

There is authority for suspension. In *In re Frick*, 694 S.W.2d 473 (Mo. banc 1985), this Court disbarred a lawyer convicted of unlawful use of a weapon. In that case, no one was injured with the weapon. Recently this Court has cited with approval the standards promulgated by the American Bar Association's Center for Professional Responsibility. Under Standard 5.12, suspension is generally appropriate when a lawyer knowingly engages in criminal conduct that seriously adversely reflects on the lawyer's fitness to practice law.

If this Court is to exercise its discretion to consider leniency, my view is that the leniency should be considered after suspension, not before. While this Court's Rule 5.26, now Rule 5.28, prohibits application for reinstatement before five years after the date of successful completion of any sentence or period of probation for a felony, it would seem that the same mitigating factors that the majority has taken into account in its analysis could be applied, on this occasion, to consider a waiver of the provisions of Rule 5.26. I would suspend respondent from the practice of law, giving respondent leave to reapply for admission in six months.