In re Robert A. GRIFFEY, Respondent.

No. 75473.

Supreme Court of Missouri, En Banc.

March 22, 1994.

John E. Howe, Sam S. Phillips, Jefferson City, for informant.

Robert B. Langworthy, Kansas City, for respondent.

## DISCIPLINARY PROCEEDING

HOLSTEIN, Judge.

Respondent Robert A. Griffey, a licensed attorney, was charged by information filed by the chief disciplinary counsel with several violations of Missouri Supreme Court Rule 4, the Rules of Professional Conduct. Mr. Griffey is alleged to have violated Rules of Professional Conduct 1.1, relating to competent representation, 1.3, relating to diligence in representing clients, 1.4, requiring a lawyer to keep the client reasonably informed, 1.15(a), relating to safeguarding of his client's property, 1.15(b), requiring prompt notice to a client or third party upon receiving money or property belonging to that person, and 8.4, forbidding lawyers from committing a criminal act, dishonesty, fraud, deceit or misrepresentation, or committing acts detrimental to the administration of justice. All of the violations arose out of Mr. Griffey's employment by Laura Jean Alexander (Jean) to represent the estate of Laura Roberta Alexander, Jean's deceased mother. Honorable Michael Maloney was appointed master to hear the evidence. He filed findings of fact and conclusions of law. We find that Mr. Griffey violated the Rules of Professional Conduct and he is ordered disbarred.

## I.

 The master's findings, conclusions and recommendations are helpful in determining disposition in a particular case but, ultimately, this Court examines the evidence and makes the necessary factual determinations. *In re Randall B. Kopf*, 767 S.W.2d 20, 21 (Mo. banc 1989). Since this is a disciplinary proceeding, guilt must be established by a preponderance of the evidence. *In re Elliott*, 694 S.W.2d 262, 263 (Mo. banc 1985). The record is reviewed with these principles in mind.

Mr. Griffey was first contacted by Jean about a week after her mother died in late October of 1991. Jean executed two documents that day, one entitled "Contract for Employment of Attorneys Hourly" and one entitled "Designation of Representative." Jean told Mr. Griffey that her mother died leaving two heirs, Jean and her brother, Richard Stephenson Alexander (Steve). Jean believed that her mother had executed a will and that Steve might have the will. She indicated some concern about Steve's temper and indicated he would not be cooperative if asked to produce the will. However, Jean also stated she thought she and Steve could work together to settle their mother's estate. Mr. Griffey told her not to communicate with Steve.

Mr. Griffey opened an estate account at the bank in his office building to receive estate funds and pay estate bills. Jean delivered a social security check payable to the decedent. She explained to Mr. Griffey that the check must be returned because it covered a time after her mother had died. Mr. Griffey nonetheless took the check. He also directed Jean to pay him for reimbursement of expenses with a check drawn on the estate account, although there were no funds in the account. Soon after, Mr. Griffey deposited the social security check into the estate account.

On December 31, 1991, Mr. Griffey submitted a bill for $2,329.50. This bill was submitted to Jean along with a check on the estate checking account that Mr. Griffey had opened, made out by and payable to him in the sum of $2,329.50. A notation on the check indicated it was for expenses of administration and attorneys fees. Jean signed the check and mailed it back to Mr. Griffey. At that point in time, no one had been appointed personal representative of the decedent's estate and no approval of the probate court was obtained for this payment. Letters of administration were not issued until January 17, 1992.

Between November 1 and November 4, 1991, Mr. Griffey sent letters both to Steve and to several insurance companies indicating that he had been designated as the representative of the estate and that proceeds of life insurance and other documents should be sent to him. In fact, letters of administra-

tion were not sought until December of 1991 and, as noted above, not issued until January 17, 1992.

In response to the letters, the decedent's former employer sent two retirement checks to respondent, one for approximately $8,300 payable only to Jean, and the other for approximately $8,800 payable only to Steve. At Mr. Griffey's suggestions, Jean agreed to deposit her check in the estate account. He also advised Jean to deposit Steve's check in the estate account. Following Mr. Griffey's directions, Jean endorsed Steve's check "For deposit only" and it was deposited into the estate account. Mr. Griffey did not notify Steve he received the check or tell Steve the check had been deposited in the estate account.

Both Steve and Jean signed papers permitting Jean to obtain proceeds of a lost life insurance policy issued by National Fidelity Life Insurance Company (NFLI). In December 1991, NFLI sent two $500 checks to Mr. Griffey; one payable to Jean and the other payable to Steve. Mr. Griffey had neither written nor oral authority to endorse these checks. Nevertheless, he forged the signatures of the payees and deposited the checks into his office operating account on December 31, 1991. Jean asked respondent in January and February of 1992 if he had received any money or correspondence from NFLI. Mr. Griffey stated he had not heard from the company and surmised that NFLI just did not want to pay the proceeds.

From late January to mid-February, Jean received two letters from the probate court notifying her the estate was subject to sanctions because the necessary paperwork had not been filed. She discharged Mr. Griffey on February 13, 1992, and retained another attorney to handle her mother's estate. Notably omitted from the file delivered to the subsequent attorney were all references to the NFLI policies. Upon calling NFLI, Jean discovered the two $500 checks payable to her and her brother had been sent to respondent and cashed in December, 1991. When Griffey was confronted regarding the checks, he repaid Jean and Steve the $1,000 life insurance benefits. He repaid this $1,000 from money on his office trust account, al-though the checks had not been deposited there.

## II.

Rule 1.1 requires that an attorney provide his or her client competent representation. Mr. Griffey acted incompetently when he instructed Jean to deposit the retirement fund proceeds payable to Steve in the sum of $8,800, and Jean's check for $8,300 payable to her in the estate account because there was nothing to suggest that such funds should be included in the estate. Mr. Griffey acted incompetently when he directed Jean to write him a check for $225 on the estate account at a time when it did not have sufficient funds. Mr. Griffey was also incompetent in advising Jean to pay him legal fees and accepting legal fees before securing approval of the probate court. He further indicated a lack of competence by endorsing and depositing the two $500 checks in his office account as will be discussed below.

Rule 1.3 requires that a lawyer shall act with reasonable diligence and promptness in representing a client. Mr. Griffey violated both Rule 1.1 and 1.3 by failing to timely file appropriate pleadings and reports with the probate court. Griffey's failure to act subjected the estate to potential sanctions.

Mr. Griffey violated Rule 1.4, which requires a lawyer to keep his client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. That rule also imposes a duty on lawyers to explain matters to a client sufficiently so that the client may make informed decisions. In this case, Griffey failed to tell the Alexanders he received the checks, then misrepresented to a subsequent attorney that those checks had been deposited into his trust account.

Rule 1.15(a) requires that a lawyer hold property of clients or third persons that is in a lawyer's possession in connection with representation separate from the lawyer's own property. Mr. Griffey violated this rule when he deposited the NFLI checks into his office operating account and failed to maintain adequate records regarding the disposi-

tion of those checks. Mr. Griffey further violated Rule 1.15(a) by directing expenditures from the estate account before having sought permission of the court to expend estate funds.[1] Mr. Griffey also violated this rule by repaying the Alexanders from a trust account apparently in an effort to represent to the Alexanders that their money had been kept separate from his own.

Mr. Griffey violated Rule 1.15(b), which requires attorneys, upon receiving funds or property of a client or third person, to notify the client or third person and to deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, when requested to do so, promptly render a full accounting. Mr. Griffey violated this rule when he received the two checks from NFLI and did not report it to the Alexanders.

Perhaps the most egregious conduct by Mr. Griffey was the forgery of the Alexanders' names on their life insurance checks and the deposit of those checks into his office operating account. In a criminal proceeding, proof beyond a reasonable doubt of that conduct could result in a criminal conviction. At a minimum, it reflects upon Mr. Griffey's honesty, trustworthiness and fitness to practice law. In addition, Mr. Griffey's instruction to Jean to deposit Steve's $8,800 check into the estate account was plainly dishonest and deceitful. All of the conduct noted in this paragraph is a violation of Rule 8.4.

Respondent argues that the forging of the signatures on the life insurance checks was done by mistake and that the deposit of those funds into his office operating account was also a mistake. Mr. Griffey's subsequent attempt to cover up the improper conduct compounds the seriousness of the deeds and belies his argument of mistake. The conversion of those funds was willful and deliberate. Mr. Griffey argues that the reason for making his mistakes was that his office was in disarray because of his own lack of organiza-

tion, construction at his office and the loss of his secretary during the time frame. The master found, and we agree, that these explanations are insufficient to mitigate the seriousness of Mr. Griffey's violations of the rules.

The question remaining is, what is the appropriate sanction? In this case, Mr. Griffey deceived and defrauded his clients by failing to safeguard their funds and by acting to deceive and thereby deprive his clients of money belonging to them. Where conversion of a client's money is involved, disbarment is the appropriate remedy. *See Matter of Mendell*, 693 S.W.2d 76 (Mo. banc 1985). Even an unintentional mishandling of client funds by an attorney can justify disbarment. *See In re Williams*, 711 S.W.2d 518, 522 (Mo. banc 1986).

The Court orders respondent disbarred from the practice of law in Missouri and further orders that his name be stricken from the roll of attorneys. Consistent with *ABA Standards for Imposing Lawyer Sanctions, Rule 2.2 (1986)*, no application for reinstatement will be considered by this Court for a period of five years. Costs are taxed to respondent.

COVINGTON, C.J., BENTON, THOMAS, PRICE and LIMBAUGH, JJ., and PREWITT, Special Judge, concur.

ROBERTSON, J., not sitting.

---

1. The estate in this case was not an independent administration under § 473.780, et seq., RSMo 1986. Attorney compensation is subject to approval of the probate division of circuit court. § 473.153, RSMo 1986.