**In re Steven S. FRANK, Respondent.**

**No. 75405.**

Supreme Court of Missouri,
En Banc.

Oct. 25, 1994.

ORIGINAL DISCIPLINARY
PROCEEDING

COVINGTON, Chief Justice.

This is an original disciplinary proceeding instituted by the Bar Committee of the 21st Judicial Circuit pursuant to Rule 5, against respondent, Steven S. Frank. Respondent is and was at all relevant times admitted to the practice of law in the State of Missouri. A twelve-count information charged respondent with violation of Rules 1.1, 1.3, 1.4, and 8.1 of Rule 4, Rules of Professional Conduct.[1] The information prays that respondent be disbarred from the practice of law.

The Court appointed as Master to hear the proceedings the Honorable Lucy D. Rauch, Judge of the Eleventh Judicial Circuit. Judge Rauch conducted a hearing on the matter. Judge Rauch made findings and recommended that respondent be disbarred. Respondent failed to attend the hearing and did not file exceptions to the Master's report.

The Master's findings, conclusions, and recommendations in a disciplinary case are advisory in nature. *In re Stricker*, 808 S.W.2d 356, 356 (Mo. banc 1991). This Court reviews the evidence de novo, determines independently the credibility of the witnesses, and makes its own conclusions of law. *Id.* Discipline is warranted when a respondent's guilt is established by a preponderance of the evidence. *Id.*

The facts of this case reveal an appalling pattern of respondent's refusal to communicate with his clients or to act with reasonable diligence in expediting their cases. Furthermore, respondent consistently failed to cooperate with those who investigated the many complaints against him. After independent review of the evidence, this Court agrees substantially with the Master's findings and recommendations and orders suspension.

## COUNT ONE

On October 16, 1990, Edward Clopton retained respondent to represent him as the petitioner in a dissolution of marriage proceeding. Mr. Clopton paid in full and completed the necessary forms, but respondent

John E. Howe, Sam S. Phillips, Jefferson City, for informant.

Steven S. Frank, St. Louis, for Frank.

1. Unless otherwise indicated, citations are to the Supreme Court Rules.

neither forwarded income and expense forms to Mr. Clopton's wife nor filed a dissolution petition. Respondent repeatedly failed to return Mr. Clopton's telephone calls and was late and unprepared for their meetings. On May 13, 1991, Mr. Clopton filed a complaint against respondent. The committee appointed an investigator, who attempted to contact respondent. Respondent failed to respond to three letters and several telephone calls from the investigator.

A lawyer must provide competent representation to a client, Rule 1.1, and act with reasonable diligence and promptness in the representation, Rule 1.3. A lawyer has the further duty to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. Rule 1.4. Rule 8.1 provides that a lawyer shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority in connection with a disciplinary matter.

The Master found, and this Court agrees, that respondent violated Rules 1.1, 1.3, 1.4, and 8.1 by his behavior in the Clopton matter and the ensuing investigation.

## COUNT TWO

On April 11, 1991, respondent undertook to represent Alyce Wilkins as the petitioner in an uncontested dissolution of marriage proceeding. After numerous unreturned telephone calls to respondent and three weeks of waiting for him to send her the appropriate forms to complete, Ms. Wilkins went to respondent's office to pick them up. Ms. Wilkins and her husband completed the forms and returned them to respondent within a week. Ms. Wilkins telephoned respondent several times during June of 1991 to inquire about her court date, but respondent replied that he did not yet have one. In July, 1991, Ms. Wilkins left many unanswered telephone messages at respondent's office before calling the courthouse, only to discover that no petition had been filed. During the week of July 21, 1991, Ms. Wilkins left more than twenty messages at respondent's office regarding his failure to file a petition. Respondent called Ms. Wilkins once in response, saying he would check into it. On July 27

and again on July 29, 1991, Ms. Wilkins telephoned respondent to terminate the representation and demand the return of her money and the forms she and her husband had completed. On July 30, 1991, Ms. Wilkins twice unsuccessfully sought respondent at his office for the same reason. That evening, respondent left a message on Ms. Wilkins' answering machine, indicating that he would call her the next day. Respondent did not call the next day. On July 31, 1991, Ms. Wilkins lodged a complaint against respondent with the Bar Association of Metropolitan Saint Louis. On August 5, 1991, Ms. Wilkins wrote respondent demanding the return of her fee and the forms, enclosing a copy of her complaint. Later in the month respondent returned the fee and the forms.

Respondent violated Rules 1.1, 1.3, and 1.4 in his handling of the Wilkins matter.

## COUNT THREE

Neither the Master nor the bar committee found evidence to support a violation as to Count Three. Count Three is dismissed. Rule 5.21(c).

## COUNT FOUR

On February 2, 1991, respondent undertook to represent Lisa Folse as the petitioner in a dissolution of marriage proceeding. Ms. Folse advanced respondent the filing fee for the dissolution action and completed the necessary paperwork. Ms. Folse understood that she was to pay respondent's fee of $150 after the petition had been filed and her husband served. A few weeks later, Ms. Folse telephoned respondent to inquire about the progress of her case. Respondent told Ms. Folse that she would have to complete the same papers again, and she complied. Over the next several months, Ms. Folse telephoned repeatedly to inquire about the status of her case only to be told that respondent was having trouble obtaining service of process on her husband in Florida. On May 23, 1991, Ms. Folse went to respondent's office and discovered that respondent had never filed the petition. Ms. Folse demanded that respondent return the filing fee she had advanced, and respondent promised to return it. In July, Ms. Folse called respon-

dent to inquire about the status of her refund. Respondent replied that he had mailed a check to her, but that the check must have been lost in the mail.

Ms. Folse filed a complaint with the Bar Association of Metropolitan Saint Louis. The committee appointed an investigator to inquire into possible ethical violations. In response to numerous calls from the committee's investigator, respondent made one telephone call to the investigator in which respondent stated that he had returned Ms. Folse's deposit and promised a written response to the complaint. Respondent did not respond in writing as he had promised and did not respond to a subsequent letter of the investigator. As of October 23, 1991, Ms. Folse had not received a refund of her deposit.

Respondent violated Rules 1.1, 1.3, 1.4, and 8.1 in his handling of the Folse matter and the subsequent investigation.

## COUNT FIVE

Respondent undertook the representation of Jack Loomstein in May, 1989. Mr. Loomstein had filed a claim with his insurer for hail damage to his home. The insurance company refused to pay and Mr. Loomstein sought respondent's help in the matter. Respondent contacted the insurer regarding a settlement and threatened to file suit. When, by the spring of 1991, it became apparent that respondent could not obtain a settlement from the insurer, respondent told Mr. Loomstein that he was going to file suit. Respondent never did so. Mr. Loomstein thereafter began to experience trouble contacting respondent. Respondent stopped returning Mr. Loomstein's calls in June, 1991. On August 25, 1991, Mr. Loomstein wrote to respondent terminating the representation and demanding the return of his papers. Respondent did not respond to the letter or return Mr. Loomstein's papers.

The evidence shows that respondent violated Rules 1.1, 1.3, and 1.4 in his representation of Mr. Loomstein.

## COUNT SIX

Respondent undertook to represent Doretta Freeman as the petitioner in a dissolution action on April 19, 1991. Respondent accepted a fee deposit and payment in full for his services on that date. Ms. Freeman thereafter made repeated unsuccessful attempts to contact respondent and obtain the appropriate paperwork. By December, 1991, respondent had not filed a dissolution action. Respondent failed to respond to several telephone calls and two letters from the committee's investigator.

The record reflects that respondent violated Rules 1.1, 1.3, 1.4, and 8.1 in connection with the Freeman matter.

## COUNT SEVEN

Respondent agreed to represent Jacqueline Schaffer in a child custody and support matter in November, 1990. Respondent accepted a fee in advance and told Ms. Schaffer that the matter would be concluded by February, 1991. In February, 1991, after unsuccessful attempts to reach respondent, Ms. Schaffer went to respondent's office and inquired about the status of her case. Respondent promised to make the matter a priority. In July, 1991, after several more months of not hearing from respondent, Ms. Schaffer again went to respondent's office, and respondent again promised to expedite the matter. On August 28, 1991, after respondent failed to respond to several telephone messages, Ms. Schaffer lodged a complaint with the Better Business Bureau. The complaint was referred to the bar committee. Respondent failed to respond to a letter and two telephone calls from the committee's investigator. Ms. Schaffer sought the advice of a different lawyer who concluded the matter in three weeks.

The Master found, and this Court agrees, that respondent violated Rules 1.1, 1.3, 1.4, and 8.1 in his representation of Ms. Schaffer and the ensuing investigation.

## COUNT EIGHT

On March 9, 1991, respondent undertook the representation of Joan Dudhowski in a stepparent adoption matter. Respondent promised to have the adoption completed be-

fore the child returned to school in August, 1991. Respondent failed to return repeated telephone calls from Ms. Dudhowski over the course of the next year. Respondent admits in his answer to the information filed in this Court that he failed even to file the petition for adoption until July 23, 1991.

Respondent violated Rules 1.1, 1.3, and 1.4 in his representation of Ms. Dudhowski.

### COUNT NINE

On February 7, 1990, respondent undertook the representation of Aanarian Martin regarding Mr. Martin's claim against a supermarket for false imprisonment. In December, 1990, not having heard from respondent, Mr. Martin went to respondent's office to inquire about the status of the matter. Respondent's secretary told Mr. Martin that respondent would telephone Mr. Martin with a status report. Respondent did not provide a status report, nor did he return subsequent telephone calls from Mr. Martin.

Mr. Martin complained to the Bar Association of Metropolitan Saint Louis, which forwarded the complaint to the bar committee. Respondent failed to respond to two letters and a telephone call from the committee's investigator.

The evidence supports a finding that respondent violated Rules 1.1, 1.3, 1.4, and 8.1 in his handling of the Martin matter and the committee's investigation.

### COUNT TEN

Respondent undertook the representation of John Nunnery's son in a criminal matter on June 19, 1990. Mr. Nunnery agreed to pay respondent one hundred dollars per hour for legal services. The fee was to be paid first from the refund of the two thousand dollar bond that Mr. Nunnery had posted. Any excess from the bond refund was to be returned to Mr. Nunnery. Respondent ap-

peared on behalf of the younger Nunnery at two hearings which resulted in postponements because the state's witness failed to appear. When the witness failed to appear for a third hearing at which respondent represented the defendant, the charge was dismissed. Respondent obtained the entire bond refund from the court in December, 1990.

In January, 1991, Mr. Nunnery inquired whether respondent's fees exceeded the amount of the bond. Respondent answered that he would check on the bond and contact Mr. Nunnery. Respondent did not contact Mr. Nunnery and, in the ensuing weeks, failed to answer or return numerous telephone calls from Mr. Nunnery. Mr. Nunnery wrote to respondent in February, 1990, demanding an itemized bill for respondent's services but received no response. Mr. Nunnery complained to the Bar Association of Metropolitan Saint Louis on February 27, 1991. The bar association forwarded the matter to the committee. Respondent failed to respond to letters and telephone calls from the committee's investigator.

The Master found that respondent failed to provide competent representation in violation of Rule 1.1 and to act with reasonable diligence and promptness in the representation in violation of Rule 1.3. This Court disagrees. Mr. Nunnery had no complaints about respondent's competence or diligence in the representation. After independent review of the evidence, this Court finds that informant has failed to prove by a preponderance of the evidence that respondent violated Rules 1.1 and 1.3.[2]

The Master found, and this Court agrees, that respondent failed to respond to reasonable requests for information from Mr. Nunnery in violation of Rule 1.4 and knowingly failed to respond to a lawful demand for

---

**2.** The Court does not endorse respondent's conduct. Rule 1.15(b) mandates that a lawyer shall promptly notify a client upon receiving funds or other property in which the client has an interest. A lawyer shall promptly deliver to the client any funds or property that the client is entitled to receive and, on the client's request, shall promptly render a full accounting regarding such property.

Rule 1.15(c) provides that, when a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning the respective interests of the lawyer and the client in such property, the lawyer must keep the disputed part separate until the dispute is resolved.

information from a disciplinary authority in violation of Rule 8.1.

## COUNT ELEVEN

In January, 1991, respondent agreed to represent Charles Sims in a probate matter. Respondent accepted a fee of two hundred fifty dollars in advance and, then, failed to perform any work on the matter. Some months later, Mr. Sims terminated the representation and demanded that respondent return the prepaid fee. Respondent agreed to return the fee, but failed to do so. Respondent did not respond to any of Mr. Sims' subsequent telephone messages. Respondent failed to respond to two letters from the committee.

Respondent violated Rules 1.1, 1.3, 1.4, and 8.1 in connection with the Sims matter.

## COUNT TWELVE

Shirley Ivey retained respondent to represent her as the petitioner in a dissolution of marriage proceeding. Ms. Ivey completed preliminary paperwork, paid respondent in advance for his services, and deposited with respondent the filing fee. Service was never obtained on Ms. Ivey's husband. Respondent failed to return any of Ms. Ivey's telephone calls. Respondent did not reply to five letters sent to him by Ms. Ivey. Ms. Ivey eventually retained other counsel. Respondent failed to respond to a letter and several telephone calls from the committee's investigator assigned to the Ivey case.

Respondent violated Rules 1.1, 1.3, 1.4, and 8.1 in his handling of the Ivey matter and the ensuing investigation.

## PRIOR DISCIPLINARY PROCEEDINGS

Respondent has twice previously been subjected to sanctions for misconduct. On March 28, 1991, the committee issued respondent a written admonition for violations of Rules 1.3 and 1.4 in connection with a stepparent adoption under circumstances very similar to those recited in Count Eight. It was anticipated that the adoption would be completed prior to the beginning of the 1990 school year. The petition was not filed until October, 1990. The adoption proceeding was completed on December 6, 1990. In addition to unreasonably delaying the action, respondent failed to keep his client reasonably informed about the status of the matter.

Not six weeks later, on May 7, 1991, the committee issued respondent another written admonition for similar conduct in a different case. Respondent was admonished for failing to communicate with the clients, represent them adequately, or respond to requests for information from a disciplinary authority.

## THE SANCTION

In disciplinary proceedings, the Court's objective is to protect society and maintain the integrity of the legal profession. *In re Waldron,* 790 S.W.2d 456, 461 (Mo. banc 1990). This Court is authorized to administer four types of discipline: reprimand; indefinite suspension; suspension for a fixed period; and disbarment. *In re Oberhellmann,* 873 S.W.2d 851, 856 (Mo. banc 1994); Rule 5.21(c).

Absent aggravating or mitigating circumstances, reprimand is generally appropriate when a lawyer has received an admonition for the same or similar conduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession. ABA Standards for Imposing Lawyer Sanctions, Rule 8.3(b) (1986) ("ABA Standards").

There are no factors in the present case that would mitigate the sanction. ABA Standards, Rule 9.2. The Court finds that several aggravating factors are applicable. Respondent has committed prior disciplinary offenses. ABA Standards, Rule 9.22(a). The facts recited above indicate multiple offenses and a pattern of misconduct. ABA Standards, Rules 9.22(c) and (d). Respondent consistently engages in bad faith obstruction of disciplinary proceedings by intentionally failing to comply with the committee's requests for information and admonitions to reform his conduct. ABA Standards, Rule 9.22(e). Respondent, in his answer to the information, in his brief, and in his argument before this Court, has refused to acknowledge the wrongful nature of his conduct,

except as to his failure to respond to the bar committee's investigators. ABA Standards, Rule 9.22(g). Respondent's clients suffered, at the very least, frustration and delay in having their legal matters resolved. The clients in Counts Five, Nine, and Eleven faced the real danger of pecuniary loss. Respondent's activities are such that corrode the public confidence in the legal profession and in the administration of justice.

Reprimand is not the proper sanction for respondent. As noted above, two previous written admonitions from the bar committee have done nothing to curb respondent's misconduct. Respondent's thirty-nine ethical violations in the representation of eleven clients demonstrate a disturbing, continuing disregard for the rights and interests of his clients. A sanction stronger than a reprimand is clearly necessary to protect the public and the legal profession.

■ Suspension is generally appropriate when a lawyer knowingly fails to provide services for a client, or engages in a pattern of neglect, and thereby causes injury or potential injury to the client. ABA Standards, Rule 4.42. Disbarment is typically reserved for clear cases of gross misconduct, those in which the attorney is demonstrably unfit to continue the practice of law. *In re Ver Dught*, 825 S.W.2d 847, 851 (Mo. banc 1992).

■ Respondent's infractions consist largely of his neglecting his duties to his clients, by failing to communicate with them and in failing diligently to pursue their cases. Respondent also repeatedly disregarded his responsibility to the legal profession by failing to respond to disciplinary authorities. Although respondent's actions reflect a pattern of neglect, the volume and repeated nature of respondent's ethical violations make the question of whether to disbar or suspend a close question.

Having fully considered the law and the evidence, this Court determines to suspend respondent from the practice of law. Respondent may not apply for readmission before a period of two years from the date of this order has elapsed. In addition to all other prerequisites to readmission, respondent is ordered to complete the Missouri Lawyers' Assistance Program provided by The Missouri Bar, or an equivalent counselling program, the purpose of which is to provide counselling for lawyers with problems leading to mismanagement of a law practice and arising as a result of impairment, be it physical, psychological, or other. Prior to seeking reinstatement, respondent shall file proof of compliance with this requirement with the Office of the Chief Disciplinary Counsel. Costs are taxed against respondent.

All concur.