**In re Gerald L. WARREN, Respondent**
**(Two Cases).**

**Nos. 73958, 74629.**

Supreme Court of Missouri,
En Banc.

Nov. 22, 1994.

As Modified on Denial of Rehearing
Dec. 20, 1994.

Gerald L. Warren, pro se.

Michael S. Geigerman, St. Ann, for Circuit Bar Committee.

John E. Howe, Chief Disciplinary Counsel, Sam S. Phillips, Jefferson City, for petitioner.

ORIGINAL DISCIPLINARY
PROCEEDINGS

THOMAS, Judge.

This is a combination of two disciplinary proceedings instituted against respondent, Gerald L. Warren. Respondent is and was at all relevant times admitted to the practice of law in the State of Missouri. In case No. 73958 (first case), the Circuit Bar Committee for the 21st Judicial Circuit seeks discipline alleging that Warren lied on his application to the Illinois Bar in 1985. In case No. 74629 (second case), the chief disciplinary counsel seeks discipline stemming from Warren's misdemeanor convictions for criminal non-support and harassment. The Honorable C. William Kramer was appointed as Special Master in the first case, and in March 1992, Judge Kramer recommended that respondent be disciplined by public reprimand for his conduct charged in that case. Before this Court could act on this recommendation, respondent's second case had developed and further action on the first case was deferred pending the Master's Report in the second. Judge Kramer again was appointed to act as Special Master and in February 1994 issued his report on the second case. Judge Kramer recommended that respondent be suspended from the practice of law. Respondent filed a brief with this Court for the first case, but failed to file a brief in the second. Pursuant to this Court's established practice, respondent was not allowed oral argument on the second case because of his failure to file a brief in support of his position. Thus, the second case was submitted without oral argument. This Court, however, has given full consideration to the exceptions to the Master's Report that respondent filed in the second case.

■ The findings of the master are advisory in nature. *In re Adams,* 737 S.W.2d 714, 717 (Mo. banc 1987). This Court reviews the evidence de novo and makes its own conclusions of facts and law. *In re Murphy,* 732 S.W.2d 895, 902 (Mo. banc 1987). After independent review, this Court agrees with the Special Master that respondent's violations of the rules of professional conduct warrant a suspension of his license to practice law.

## Case No. 73958

In 1985, respondent made a false statement on his application to be admitted to the Illinois Bar. Warren sought to be admitted to the Illinois Bar based on reciprocity, but knew he was ineligible because he had previously flunked the Illinois bar examination. When asked on the application, however, respondent lied and stated that he had not previously taken the examination.

Disciplinary Rules 1–101 and 1–102 were in effect at the time respondent lied on his application to the Illinois Bar. Disciplinary Rule 1–101 provided that "[a] lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with, his application for admission to the bar." Rule 1–102 provided that a "lawyer shall not: (1) violate a disciplinary rule ... (4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ... (6) engage in any other conduct that adversely reflects on his fitness to practice law." This Court finds that respondent, by his own admission, violated Disciplinary Rules 1–101 and 1–102 by making a material false statement on an application for admission to the Illinois Bar.

## Case No. 74629

The second case involves respondent's criminal convictions for nonsupport and harassment. Respondent was married in 1975, and his marriage was dissolved in 1986. Respondent's ex-wife was given custody of the two children of the marriage, and respondent was ordered to pay $600 a month child support. Respondent made support payments until March 1990, when he ceased making payments. In May 1991, he was charged with violating Missouri's criminal nonsupport statute which provides, "a parent commits the crime of nonsupport if such parent knowingly fails to provide, without good cause, adequate support which such parent is legally obligated to provide for his child...." § 568.040, RSMo Supp.1990. Under section 559.350, RSMo 1949, the predecessor of section 568.040, the requirement of "good cause shown" requires the State must "present facts from which it may be concluded that the defendant was able to support the children." *State v. Akers,* 287 S.W.2d 370, 372 (Mo.App.1956). Respondent entered a plea of guilty to the offense and was placed on probation for a period of two years.

Respondent again fell behind in his payments, and a request for revocation of his probation was filed in December 1991. Respondent's probation was revoked in January 1992, and in February 1992 he was sentenced to sixteen days of imprisonment. His sentence was later reduced to three days, which he served.

Respondent was also charged with the misdemeanor offense of harassment in May 1991. This charge arose out of a letter containing a death threat that respondent wrote to his ex-wife's husband (Mr. Kennard) in August of 1990. This letter was occasioned when his ex-wife notified him that she was not sending their two children to visit him and his mother in Oregon. The police discussed the letter with respondent shortly after it was received, but they agreed no action would be taken on the letter upon the condition that respondent cease bothering his ex-wife and her husband. Then, prior to May 1991, respondent was involved in another confrontation with the Kennards in which he challenged Mr. Kennard to a fight. Sometime after that, respondent called and advised the Kennards that they should be on the alert because some night he would be waiting in the dark for them. Following this series of incidents, the harassment charge was filed in May 1991. On October 21, 1991, respondent entered a plea of guilty to harassment, imposition of sentence was suspended, and he was placed on probation for two years on the condition that he have no contact with Mr. Kennard.

In this second disciplinary proceeding, discipline is sought against respondent pursuant to Supreme Court Rule 5.20, which provides for the suspension of an attorney from the practice of law when a lawyer has been found guilty of "any misdemeanor ... involving ... moral turpitude" whether the conviction resulted from a plea of guilty, nolo contendere, or from a verdict after trial. This Court has defined moral turpitude as an "act of base-

ness, vileness or depravity in the private and social duties which a man owes to his fellow-man or to society in general, contrary to the accepted and customary rule of right and duty between man and man; everything done contrary to justice, honesty, modesty and good morals." *In re Frick*, 694 S.W.2d 473, 479 (Mo. banc 1985).

In *In re Duncan*, 844 S.W.2d 443 (Mo. banc 1992), this Court held that the willful failure to pay federal income tax amounted to moral turpitude. As with the criminal charge of nonsupport, an element of this crime is a showing that the taxpayer had the ability to pay but failed to do so. "Public confidence in the Bar cannot be maintained if attorneys may practice, with impunity, after tax convictions." *Id.* at 444.

Likewise, respondent's conduct as evidenced by his willful failure to provide for his children without good cause calls into question his judgment and honesty and erodes the public's confidence in lawyers and the courts in general. The support of one's children involves the discharge of one of the most basic responsibilities that a person assumes as a member of society. Certainly this responsibility is comparable to the responsibility that one has to pay federal income tax. The failure to discharge this responsibility, therefore, is an act of moral turpitude.

Respondent's written and oral threats to his ex-wife and her husband speak for themselves. Respondent's written death threat and further threat that he would be waiting in the dark for the Kennards clearly involve baseness, vileness or depravity.

This Court finds that respondent's convictions involve moral turpitude.

### Aggravating and Mitigating Circumstances

Respondent admits that he lied on the application for the Illinois Bar but asserts that he only did so because he was in a frenzy from both being unemployed since 1983 and the disintegration of his marriage. Respondent was admitted to St. Mary's Health Center, St. Louis, Missouri, for six days in March 1985. He was diagnosed as suffering from alcoholism and possible depression.

Respondent also claims that, although he has not always been up to date in his child support payments, his children have never been in need. Respondent claims to have lived a parsimonious life-style and has not bought a meal in a restaurant for himself or anything for himself, except money spent on coffee, for the last ten years.

Respondent claims that the written death threat was penned while he was drunk and under great provocation after his ex-wife refused to send his children to meet respondent and his mother in Oregon. Respondent further claims that the Kennards are cruel people and that their jeering at him over the phone prompted and provoked the threatening letter.

To respondent's credit, the record in this matter does not disclose any problems with child support or in his relations with his former wife or her husband over the past two years. On the other hand, respondent has continued his disturbing pattern of failing to stand up and face his responsibilities. In 1985, respondent lied rather than face another Illinois bar exam. Later, he failed to face up to his responsibilities to support his children, which at first caused him to be placed on probation, and ultimately, because of his continuing failure, resulted in a jail sentence. During the same period of time, rather than reasonably dealing with what was obviously a contentious situation with his ex-wife and her new husband, respondent acted with threats of violence. Moreover, in his Master's Report in the second case Judge Kramer found that respondent's "failure to fully disclose his financial status ... indicates a cavalier disregard for the Court, his profession and most importantly his children." *Master's Report*, Case No. 74629, pp. 9–10. Respondent's head-in-the-sand approach to dealing with his responsibilities is further evidenced by his failing to file a brief in this Court with regard to the second case, the case in which it was recommended to this Court that he be suspended.

*Discipline*

■ A public reprimand is insufficient discipline for respondent's acts of dishonesty, threats of physical violence, and criminal nonsupport of his children. On the other hand, disbarment is an inappropriate discipline in this case as it is "reserved only for cases of severe misconduct where it is clear the attorney is not fit to continue in this profession." *In re Shunk,* 847 S.W.2d 789, 792 (Mo. banc 1993). Suspension is appropriate when a lawyer knowingly engages in criminal conduct that seriously adversely reflects on the lawyer's fitness to practice law. *ABA Standards for Imposing Lawyer Sanctions,* Rule 5.11 (1986) (*"ABA Standards"*). As to the false statement on the application to the Illinois Bar, suspension is appropriate when a lawyer knowingly submits false statements or documents to a court. *ABA Standards,* Rule 6.12. The Court finds the intermediate discipline of suspension to be appropriate in this case.

Accordingly, respondent is suspended. He may apply for reinstatement in six months. Before seeking reinstatement, however, respondent is ordered to obtain psychological counseling and at the time of seeking reinstatement to provide a report of the counseling professional as to the nature of the counseling and the results thereof to the Office of the Chief Disciplinary Counsel.

All concur.