**In re Carol COE, Respondent.**

No. 75474.

Supreme Court of Missouri,
En Banc.

July 25, 1995.

John E. Howe, Sam Phillips, Jefferson City, for informant.

Carl W. Bussey, Kansas City, for respondent.

ORIGINAL DISCIPLINARY
PROCEEDING

BENTON, Judge.

The Chief Disciplinary Counsel charges attorney Carol Coe with "conduct intended to disrupt a tribunal." *Rules of Professional Conduct, Rule 3.5(c).* After reviewing the evidence de novo, this Court concludes that Coe violated Rule 3.5(c), and orders a public reprimand.

I.

The charge stems from a 39-day, four-defendant, criminal conspiracy trial in the United States District Court for the Western District of Missouri. The judge held Coe in contempt four times, fining her $100 each for the first three incidents, and ordering her into custody for the fourth (but later releasing her after she apologized). *See United States v. Dowdy,* 960 F.2d 78 (8th Cir.1992), *aff'g* 764 F.Supp. 576 (W.D.Mo.1991).

First, on day 15 of the trial, the judge warned: "Miss Coe, you are going to be fined $100.00 every single time you speak beyond my sustaining an objection." *764 F.Supp. at 578 n. 1.* On day 19, the judge ruled adversely to Coe. She then gestured with her arms, legs and body, while facing the jury and audience, in order to express displeasure with the ruling.

Second, on day 25, the court overruled a Coe objection, starting this dialogue:

MS. COE: Can you in the name of Jesus be fair.

THE COURT: You, lady, are getting a lot more fairness than you are entitled to in this courtroom.

MS. COE: That's fine. I wish Jesus would touch you so you would stop being so bias every time I get up. It's a problem we can't go into this. When she asked him you let him answer. When I get up there I can't. And I am sick of it—I am sick of it.

THE COURT: Are you quite through?

MS. COE: Yes, I am through.

THE COURT: The objection is overruled. Go ahead, Miss Parker [prosecutor]. We will deal with that during the break, Miss Coe.

MS. COE: You do whatever you want to do. I am tired of you being unfair. When I ask about this incident I can't go into it.

THE COURT: I am going to have you removed from the courtroom if you don't be quiet.

MS. COE: You can do whatever you want. You are the judge. You are in charge. But I am sick and tired of you not letting these people testify directly. You know it's in the report. [*960 F.2d at 80.*]

Third, on day 30, the court ordered Coe not to ask a repetitive question, initiating this exchange:

MS. COE: If I have to ask something 500 times I am entitled to. Your job is to rule on it.

THE COURT: You are not entitled and my ruling on objections to questions that are repetitious is consistently going to be sustaining the objection from here on.

MS. COE: That's fine. You just sustained this one. If I ask them 500 times, you sustain them 500 times.

THE COURT: That will do you a lot of good.

MS. COE: I am not on trial; my client is. It doesn't do me any good to be subjected to this insult every day.

THE COURT: The insult hasn't even started yet today, Miss Coe. We will deal with that when the jury is gone. [*960 F.2d at 80.*]

Fourth, Coe stated in open court that "someone" from the judge's office told a subpoenaed witness not to appear at the trial— an allegation denied by the judge. After less than an hour in custody, Coe apologized, and the judge vacated the contempt.

## II.

Coe is charged with violating Rule 3.5(c): "A lawyer shall not ... engage in conduct intended to disrupt a tribunal." The master found that Coe "intended to disrupt the flow of the trial and to distract the jury and was blatantly disruptive of the entire judicial process." The master's findings, conclusions, and recommendations are advisory; this Court examines the evidence and determines the facts. *In re Harris,* 890 S.W.2d 299, 299 (Mo. banc 1994).

Coe admits that the incidents occurred as charged, but offers three theories why they were not intended to disrupt a tribunal.

Coe first argues that these actions did not *delay* the trial, so they did not *disrupt* the trial. For support, Coe highlights her request for an early trial date and notes all four incidents took about 45 minutes of a 39–day trial.

Assuming Coe's actions caused minimal delay, the argument fails by equating disruption with delay. The commentary to Rule 3.5(c) focuses not on the pace of a trial, but on the need for decision according to law. Coe's actions directed attention away from the witnesses and the issues toward herself, the gallery, and the judge. These actions could only distract the jury from its duty to decide the case according to law.

Coe next argues that she was baited into this conduct by the trial judge. As clear from the commentary to Rule 3.5(c), a judge's conduct does not justify disrupting a tribunal:

A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.

Coe finally argues that her statements were free speech, protected by the first amendment. An attorney's free speech rights do not authorize unnecessary resistance to an adverse ruling:

It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to "free speech" an attorney has is extremely circumscribed. An attorney may not, by speech or other conduct, resist a ruling of the trial court beyond the point necessary to preserve a claim for appeal.

*Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1071, 111 S.Ct. 2720, 2743, 115 L.Ed.2d 888 (1991); *see also In re Westfall,* 808 S.W.2d 829, 833–36 (Mo. banc 1991). Once a judge rules, a zealous advocate complies, then challenges the ruling on appeal; the advocate has no free-speech right to reargue the issue, resist the ruling, or insult the judge. *Maness v. Meyers,* 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975).

■ This Court's review of the record leaves no doubt that Coe intentionally disrupted the trial, and thus violated Rule 3.5(c) of the Rules of Professional Conduct.

## III.

The issue of discipline remains.

■ Coe previously received an admonition for a different violation of Rule 3.5(c), for walking out of a 1988 trial with the file (and returning only after receiving a subpoena) in protest of a court ruling. Absent aggravating or mitigating circumstances, when a lawyer earlier received an admonition for similar conduct, a reprimand is generally appropriate. *In re Frank*, 885 S.W.2d 328, 333 (Mo. banc 1994), *citing ABA Standards for Imposing Lawyer Sanctions (1986), § 8.3(b)*.

As mitigating factors, Coe had no dishonest motive, offered a profuse public apology, and promised not to commit similar misconduct in the future. *See ABA Standards, § 9.32*. True, as aggravating factors, there are multiple (four) offenses, and Coe apologized and promised not to repeat the conduct only after the absence of remorse was noted by two members of this Court.[1] *See ABA Standards, § 9.22*. However, Coe has already been sanctioned—by the contempt order—for the charged misconduct. *ABA Standards, § 9.32(k); see Charles W. Wolfram, Modern Legal Ethics 625 (1986)* ("Lawyers have rarely been disciplined ... for departures from rules of good order and decorum in the courtroom").

The Chief Disciplinary Counsel cites ABA Standards *§ 6.22*, recommending suspension when a lawyer

> knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

The commentary to *§ 6.22* cites one case, *In re Vincenti*, 92 N.J. 591, 458 A.2d 1268 (1983). Vincenti received a one-year suspension for 22 counts of misconduct in two separate trials:

making "constant" and "lengthy" unsupported accusations of judicial extortion, collusion, cronyism, racism, and prejudging;

engaging in collateral actions to gain advantage by demeaning and harassing the judge and opposing counsel;

calling opposing counsel "a thief, a liar, and a cheat" in open court;

making a frivolous motion for disqualification of the judge;

cursing at opposing counsel (using grossly obscene language) in public areas of the courthouse on numerous occasions;

physically threatening opposing counsel (and another lawyer who witnessed the incident); and

disrespecting parties, witnesses, and court officers, in addition to the judge.

Coe's misconduct is far less serious than Vincenti's, and did not harm her client or any other member of the public. *See United States v. Turner*, 975 F.2d 490, 493 (8th Cir.1992). The primary purpose of a disciplinary action is not to punish the offender, but to protect the public. *In re Harris*, 890 S.W.2d 299, 302 (Mo. banc 1994); *In re Westfall*, 808 S.W.2d 829, 836 (Mo. banc 1991). On this record, public reprimand is the appropriate sanction.

## IV.

Respondent Carol Coe is publicly reprimanded.

HOLSTEIN, C.J., and WHITE, Sp.J., concur.

ROBERTSON, J., concurs in result in separate opinion filed.

---

1. The apology was presented as a basis for rehearing. In an attorney discipline case, this Court functions as the trial court that enters the judgment. *Rule 5.21(b), (c); In re Harris*, 890 S.W.2d 299, 299 (Mo. banc 1994); *In re Oberhellmann*, 873 S.W.2d 851, 852–53 (Mo. banc 1994). A trial court has wide discretion to reopen a case for presentation of additional evidence and to allow rehearing. *Rule 78.01; State v. Tooley*, 875 S.W.2d 110, 115 (Mo. banc 1994); *In re Estate of Mapes*, 738 S.W.2d 853, 855 (Mo. banc 1987). The cases cited by the dissent refer to rehearing of *appeals* and thus do not dictate the procedure for rehearing in attorney discipline cases. *See Phippin v. Missouri Pacific R.R.*, 196 Mo. 321, 93 S.W. 410, 418 (1906); *Ford v. Wabash R.R.*, 318 Mo. 723, 300 S.W. 769, 778 (1927); *Allen v. Globe–Democrat Publishing Co.*, 368 S.W.2d 460, 467 (Mo.1963); *Graf v. Wire Rope Corp. of America*, 861 S.W.2d 588, 592 (Mo.App.1993).

COVINGTON, J., dissents in separate opinion filed.

THOMAS, and LIMBAUGH, JJ., concur in opinion of COVINGTON, J.

PRICE, J., not sitting.

ROBERTSON, concurring in result.

I concur in the result reached by the principal opinion. When this case was initially before the Court, the Court decided that respondent should be suspended from the practice of law. I wrote a dissenting opinion expressing the view that a public reprimand was the appropriate sanction under the circumstances of this case. Judge White concurred in my dissent. The dissent read:

One can hardly disagree with the Court's conclusion that respondent's actions violated Rule 4, Rule 3.5(c). Her actions crossed the line from zealous advocacy to border on the contumacious. My disagreement rests on the Court's answer to the question whether and to what degree this Court should impose the initial sanction against respondent.

The actions that form the basis of the complaint against respondent took place in a federal courtroom over which a federal district judge presided. Despite the fact that the federal courtroom in which these events occurred is in Missouri, the federal court is not a Missouri court over which this Court either claims or covets any supervisory control.

The federal district court for the Western District of Missouri maintains its own bar. It establishes its own continuing legal education requirements. It is an active bar with power to disbar its members who violate the rules of that bar. Thus, the federal district court in Kansas City is no different than the state court in another state for purposes of determining whether this Court ought to exercise its disciplinary responsibility over members of the Missouri Bar who commit ethical breaches while practicing under the authority of another court.

It is true that we have the authority to discipline members of the Missouri Bar for ethical violations whenever they occur. It

has been our usual practice, however, to let the court system in which the ethical violation occurred determine the appropriate sanction for ethical breaches. We consider Missouri sanctions on the basis of reciprocity.

That the initial determination of sanction in this case ought to be left to the federal district court for the Western District of Missouri is especially clear in this case. Respondent's conduct occurred in a federal district courtroom. It was an affront primarily to the honor and dignity of that court. That court system should determine the appropriate sanction. I see no reason for this Court to inject itself into that process initially. Once the federal court determines a sanction, we can consider whether a similar punishment is appropriate affecting respondent's ability to practice in Missouri courts.

Assuming this Court should determine the sanction as the majority does, I do not agree that a suspension is warranted in this case. Courts have power to protect themselves that lay persons do not. The contempt power exercised by the federal court in this case came swiftly and appropriately. Respondent faced incarceration, a deprivation of liberty of no mean significance. In addition, the federal court imposed a monetary sanction. Given these powers resident in any trial court, I do not believe that a suspension from practice is appropriate absent egregious, continuous, long-standing, habitual and contumacious behavior. I would require more than the two incidents upon which the majority builds its case, given respondent's practice of law for seventeen years.

Instead, I would publicly reprimand respondent, require her to write a public letter of apology to the trial court, and require her to ask the *Kansas City Star* and *The Daily Record* to publish it.

Two members of the majority, Judges Benton and Holstein, filed an opinion that suggested that if respondent would issue a public apology, they would consider changing their votes to impose only a public reprimand. Given that incentive, respondent apologized. Who wouldn't?

I write separately now to express my dismay at the procedures under which the Court has reached its new result. I am not blind to the fact that the sanction the Court now imposes is identical to the one Judge White and I recommended initially—with one significant difference. Judge White and I made the initial judgment that respondent's conduct warranted a public reprimand. Her failure to apologize might offer grounds for subsequent discipline, but it could not change the gravity of the offense *sub judice*. Judges Benton and Holstein determined that her conduct warranted a suspension from the practice of law but that some showing of remorse would somehow lessen the severity of her trespass.

In matters of attorney discipline, I believe the Court must weigh the gravity of respondent's ethical violation as an historic fact and without regard to the possibility that subsequent actions might bear the sweet smell of true remorse. Either the respondent's conduct warranted suspension or it did not. As Judge Covington's dissenting opinion so clearly shows, there is enough doubt cast on the motivation for an after-the-sanction apology that it impossible to determine whether the attorney is truly repentant or merely covering a malevolent heart with the cheap perfume of necessity.

Judge Covington's concerns for our procedures are well stated and entirely proper. Because I believe that a public reprimand is the appropriate sanction in this case, I concur in the result reached. I do so, however, with far more trembling than assurance, hoping that both respondent and we have learned something from this.

COVINGTON, Judge, dissenting opinion.

I must dissent. I cannot join the principal opinion because it condones abuse of the motion for rehearing, undermines the entire disciplinary process, gives credence to an apology extracted under duress, and applies an inadequate sanction.

Respondent's conduct giving rise to the present proceeding occurred in 1990. On November 22, 1994, this Court handed down an opinion, in which I joined, suspending respondent from the practice of law for six months as a sanction for her unprofessional conduct. Judge Benton concurred in the opinion, writing:

> To date, Respondent has made no sincere public apology for her conduct before Judge Stevens. In fact, Respondent's brief blames Judge Stevens for the conduct.... Respondent has never indicated that she will not engage in future disruptive conduct before a court.... [A] sincere public apology by Respondent during the fifteen days after this opinion as well as some indication that she is committed not to engage in such conduct in the future (referenced in an appropriate motion for rehearing) might well lead me to reconsider imposing a six-month suspension. However, in the present posture, I concur with the Court.

On November 30, 1994, respondent sent a letter of apology to Judge Stevens.[1] This

---

1. The letter reads in full:

Dear Judge Stevens:

Sir, I would like to take this opportunity to apologize for my conduct that constituted disrespect for your position as United States District Court Judge during the Gilbert Dowdy trial. I further apologize for the inconvenience, embarrassment, time and expense this may have cost the Court. My behavior was unprofessional and most importantly unnecessary in achieving a fair trial.

Upon reflection, I sincerely feel that I was wrong to engage in my confrontations with you during this lengthy jury trial, and to place our profession in a negative light to the general public and other jurist [sic].

I can assure you that this kind of disruptive confrontation with a trial judge will not again occur during my career as an attorney. I am sorry that my behavior has brought us to this point. This apology should have been made a long time ago to you and the Judges in the Federal Court. I have learned my lesson from this experience and will never engage in conduct of this nature again; that is disruptive to any judge I appear before.

I further assure you that I will never again publicly cast negative comments on your rulings as I did during the Dowdy trial and upon the disciplinary ruling made pertaining to that case by the Missouri Supreme Court. I regret making any public statements that would seem negative upon the judiciary and the justice system. I am wholeheartedly committed not to engage in such conduct or make any statements, in the future, that seek to define or bring about distrust of the public to our profession or the judicial system.

Court granted respondent's motion for rehearing on December 20, 1994.

To position itself to consider respondent's post-opinion apology, the principal opinion completely disregards precedent and makes a mockery of the purposes of rehearing. "The purpose of a motion for rehearing is to call attention to material matters of law or fact overlooked or misinterpreted by the court, as shown by its opinion. Reargument of issues determined by the court will be disregarded." Rule 84.17. New issues raised for the first time in a motion for rehearing are not to be considered. *Phippin v. Missouri Pac. R.R.*, 196 Mo. 321, 93 S.W. 410, 418 (1906) ("To recognize the practice of injecting into a case for the first time after a final judgment and opinion by the Supreme Court a new proposition would be subversive to all our rules of practice and directly in the teeth of all our rules."). Refusal to address new issues on a motion for rehearing has been the consistent practice of Missouri courts. *Ford v. Wabash Ry.*, 318 Mo. 723, 300 S.W. 769, 778 (1927); *Allen v. Globe–Democrat Publishing Co.*, 368 S.W.2d 460, 467 (Mo.1963); *Graf v. Wire Rope Co. of America*, 861 S.W.2d 588, 592 (Mo.App.1993). Respondent sought rehearing based on matters not in the record that occurred after the Court's opinion was handed down. I cannot join the principal opinion because it casts aside this Court's rules and precedents without justification.

The principal opinion disregards precedent in another significant respect and undermines the disciplinary process. The opinion sets the stage for respondents in subsequent disciplinary proceedings to come forward as supplicants after the fact. There is ample opportunity prior to a lawyer's arrival in this Court for the lawyer to take steps to mitigate the effect of the lawyer's misconduct. This Court's lawyer-discipline decisions should be final. To set a different precedent invites laxity in lawyer conduct, one of the very problems the Court is attempting to address in its efforts to improve the public confidence in the profession and in the legal system.

Questions regarding the sincerity of respondent's apology compound the injury to the process. Respondent has more than once flaunted her disrespect for the courts and the legal process. In 1988, respondent disrupted a criminal trial, at which she represented the defendant, by making disrespectful comments to the court. Respondent abruptly left the proceedings, taking with her the case file and leaving her client without adequate representation. Respondent was admonished for violating nine disciplinary rules. Undaunted, respondent declared that she would, if she thought it necessary, engage in the same misconduct in the future.

True to her word, if not to the ethical requirements of her profession, respondent disrupted another trial. Respondent was cited for contempt four times during the course of the *Dowdy* trial in 1990. She was released from the custody of the United States Marshal only after apologizing to the trial court. Her brief before this Court, however, revealed that respondent was anything but contrite. Respondent maintained that her outbursts were justified by the improper conduct of the trial court. At oral argument, respondent's counsel endeavored to defend respondent's conduct as justified in the "heat of battle."

Only after this Court rendered its opinion suspending respondent and Judge Benton suggested in his concurrence that he might

---

I further apologize to my colleagues and fellow members of the bar for any embarrassment that my conduct has brought to our chosen profession. I will strive to represent those standards that are required of all of us that practice law and to respect them.

Once again, Judge Stevens, I regret this unfortunate incident and can assure you it will not happen again in Court. I ask your acceptance of this apology for my behavior, my disrespect, and my poor choices of conduct during the trial.

I am making available a copy of this letter of apology, in this matter, to the Chief Disciplinary

Counsel, the President of the Missouri Bar Association, President of the Kansas City Bar Association, the *Kansas City Star* and the *Daily Record*. I am requesting, under a separate letter, that the *Kansas City Star* and the *Daily Record* publish this letter.

I am available at your convenience, should you wish to discuss this matter personally.

As always, I remain,

Very truly yours,

/s/ Carol A. Coe

reconsider the sanction if respondent apologized did she conclude that her actions had been "unprofessional," "unnecessary," and "wrong." Respondent is now eager to have the Court believe that she "will never engage in conduct of this nature again...." Her sudden about-face is entirely inconsistent with her attitude in the four years between the *Dowdy* trial and this Court's original judgment. After four years during which she had ample time to reflect on her conduct, only the spectre of suspension induced respondent to proclaim her contrition.

Respondent has a history of refusing to apologize unless under duress. In the 1988 incident, respondent returned to represent her client only after the trial court issued a subpoena ordering her to return the case file. Respondent apologized to the trial court after her fourth contempt citation in the *Dowdy* trial only in order to secure her release from custody. In view of respondent's past actions and the circumstances under which it was rendered, I cannot accept as sincere an apology extracted on pain of suspension.

Finally, I cannot join in the principal opinion because reprimand is an insufficient sanction. This Court has turned to the ABA Standards for Imposing Lawyer Sanctions (1986) for guidance in its most recent disciplinary opinions. *See In re Warren*, 888 S.W.2d 334 (Mo. banc 1994); *In re Frank*, 885 S.W.2d 328 (Mo. banc 1994); *In re Oberhellmann*, 873 S.W.2d 851 (Mo. banc 1994); *In re Griffey*, 873 S.W.2d 600 (Mo. banc 1994). The first reported case to apply the ABA Standards was *In re Storment*, 873 S.W.2d 227 (Mo. banc 1994).

There is no basis for deviation in this case. Rule 6.22, ABA Standards, provides that suspension is the appropriate sanction when a lawyer knowingly interferes with a legal proceeding. Reprimand is appropriate in this context only when the lawyer negligently causes interference. Rule 6.23, ABA Standards. There can be no doubt, as noted by the principal opinion, that respondent "intentionally disrupted the trial." Indeed, as noted by Judge Benton in his original concurrence, respondent's position when this cause was first submitted was that her actions were

appropriate under the circumstances. Suspension is the appropriate sanction.

As the principal opinion notes, reprimand is generally appropriate, absent aggravating circumstances, when a lawyer has received an admonition for the same or similar conduct in the past. Rule 8.3(b), ABA Standards. Respondent has been admonished for similar misconduct. In addition to the clear applicability of Rule 6.22, ABA Standards, calling for suspension, several aggravating factors appear in the present case rendering reprimand inappropriate under Rule 8.3(b), ABA Standards: prior disciplinary offenses, Rule 9.22(a), ABA Standards; a pattern of misconduct, Rule 9.22(c), ABA Standards; multiple offenses, Rule 9.22(d), ABA Standards; respondent's refusal, until coerced, to acknowledge the wrongful nature of her conduct, Rule 9.22(g), ABA Standards; and substantial experience in the practice of law, Rule 9.22(i), ABA Standards. Two potential mitigating factors are timely good faith efforts to rectify the consequences of the misconduct, Rule 9.32(d), ABA Standards, and remorse, Rule 9.32(l), ABA Standards. Both are notably absent in this case.

I would suspend respondent from the practice of law for six months.