613 A.2d 479

IN THE MATTER OF EMILE E. GOUIRAN,
AN ATTORNEY AT LAW.

Argued April 15, 1992—Decided October 8, 1992.

*Thomas J. McCormick* appeared on behalf of the District VIII Ethics Committee.

*Edward N. Fitzpatrick* appeared on behalf of respondent.

## ORDER

The Disciplinary Review Board having filed a report with the Court recommending that the license to practice law of EMILE E. GOUIRAN of PARIS, FRANCE, be revoked for knowingly failing to respond fully to questions on the application for

admission to the bar of this State, in violation of *DR* 1–102(A)(4) and *DR* 1–101(A), and further recommending that the revocation of respondent's license to practice be stayed for a period of six months in order to permit respondent to reapply for admission to the bar, and good cause appearing;

It is ORDERED that the license of EMILE E. GOUIRAN to practice law is hereby revoked and respondent's name shall be stricken from the roll of attorneys; and it is further

ORDERED that the revocation of respondent's license is stayed until the further Order of this Court in order to permit respondent to apply to the Committee on Character to be certified for admission to the bar of this State, provided that respondent makes such application within forty-five days after the date of this Order.

## APPENDIX

### *Decision and Recommendation of the Disciplinary Review Board*

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey.

This matter was before the Board on a recommendation for public discipline filed by the District VIII Ethics Committee. The complaint charged respondent with conduct involving dishonesty, fraud, deceit and misrepresentation and with deliberate failure to disclose material facts in connection with his application for admission to the New Jersey bar.

Respondent was admitted to the New Jersey bar in 1984. He maintained a law office in Iselin, New Jersey. Although he also passed the New York bar examination, he was denied a license to practice law in that state by its Committee on Character and Fitness. In June 1988, respondent took up permanent residence in France.

In or about 1969, prior to becoming a lawyer, respondent obtained a real estate broker's license in New York. Thereaf-

ter, he was the subject of three separate disciplinary proceedings in New York related to that license:

1. *Department of State v. Emile E. Gouiran, d/b/a Richmond Realty Services,* which resulted in a determination of untrustworthiness on January 30, 1976, with a penalty of a one-month suspension or a $200 fine. Respondent elected to pay the fine.

2. *Department of State v. National Richmond Realty Services, Inc., Emile E. Gouiran, Representative Broker,* which resulted in a conclusion of untrustworthiness and the revocation of respondent's real estate broker's license on March 11, 1980.

3. *Department of State v. National Richmond Realty Services, Inc., Emile E. Gouiran, et. al.,* which resulted in a finding of untrustworthiness and the revocation of the license, if the March 11, 1980 revocation did not survive an appeal [1].

In December 1983, respondent applied for admission to the New Jersey bar. In connection therewith he filled out and submitted to the Committee on Character a form designated Certified Statement of Candidate, which contained the following language:

*Important Instructions to Candidate:* This statement is intended to provide the Committee on Character with information relevant to your fitness to practice law. Candor and truthfulness are significant elements of such fitness. You should, therefore, provide the Committee with all available information, however unfavorable, even if its relevance is in doubt. Disclosure must be as detailed as possible. FAILURE TO DISCLOSE REQUESTED INFORMATION WILL RESULT IN CERTIFICATION BEING WITHHELD.

[Exhibit C–2]

Question X of that form inquired about the candidate's involvement in legal proceedings. Part A asked as follows: "Have you, in your individual capacity, ever been a party to or had or claimed any interest in any civil proceeding?" Respondent answered "no," followed by the explanation, "But have been co-defendant in shotgun corporate actions—all settled.... See below for example. Various [plaintiffs] always [sic] seem to throw officers in for good measure. Never went to trial on

---

[1] The revocation was upheld by the New York Appellate Division in June 1981.

any though." Part C inquired: "Have you or has any business controlled or managed by you ever been charged with fraud, larceny, embezzlement, misappropriation of funds, misrepresentation or similar offenses [including conspiracy to conceal, etc.] in any legal proceeding, civil or criminal, or in bankruptcy?" Respondent replied "yes." Part D, in turn, provided: "If you have answered yes to A, B, or C, state the nature of the proceeding and give *full details*, including dates, case numbers, name and location of court, if any, references to court records, *facts* and disposition." (original emphasis). Respondent answered as follows:

> Was partner with one M. Costes in Gouiran Real Estate Company, Inc. · He wanted to liquidate [and] split. I refused feeling market not right. He sued alleging everything [and] matter was settled by my purchase of certain corporate assets and giving him cash and by turning over balance of buildings to his RE broker for liquidation. Have heard nothing since 4/77 date settled. Copy of settlement agreement attached.\*
>
> \* As a result of his broker's mismanagement, buildings were foreclosed from the corporate owner. I had [undecipherable] mortgage. Deficiency judgments were [undecipherable] against me [I was never served]. When I discovered those were immediately settled and satisfactions filed.

In addition, respondent replied "no" to question XII, Part D, asking whether he had ever been "disbarred, suspended from practice, reprimanded, censured, removed or otherwise disciplined as an attorney or as a member of any other profession or public office" or whether "any complaints or charges, formal or informal, [had] ever been made or filed or proceedings instituted against [him] in such capacity." Lastly, respondent certified that his answers were true and accurate.

At the DEC hearing, respondent gave the following explanation for his failure to disclose the disciplinary proceedings concerning his broker's license:

> I have to sort of bring out the mental state or the state of mind that I was in, when I was completing this application. I was still in law school. I had just finished a battery of exams, and honestly I looked through the application like any law student would, questions, it's a test, and I went through it question by question, detail by detail in an analytical and critical way, and I note on the copy here that I underlined the word individual, you know, in seeking out what are the issues, and I confined myself to narrow responses. I can tell, even

though I understand that in light of the instruction that this was wrong, or at least it was an error of judgment, you know, I looked at it and a brokerage proceeding for a violation of the regulations were [sic] not civil proceedings, I didn't claim an interest in it, and I think I just made an error to that extent. I just confined myself to the very very precise language of the question, and I answered and disclosed what I believed the question dealt with, which is civil litigation, I said there was [sic] lots of them, in shotgun approaches to litigation. But I've never—I didn't fail to disclose anything that I believed; and had I believed at the time of the accident [sic] that the question called for that disclosure, I would have disclosed it.

### [T48–49] [2]

Asked why he had not revealed the disciplinary proceedings when he answered Question X, Parts C & D, respondent replied:

I took the position at the time and I remember distinctly my state of mind at the time, that the questions had to be answered accurately and narrowly and properly, and I read the question, and I saw fraud, larceny, embezzlement, misappropriation of funds dealing with civil, criminal or bankruptcy proceedings, and I have never been accused of these kind [sic] of things. The Department of State proceedings were not civil lawsuits, they were not criminal lawsuits, they were not bankruptcy things. In addition to which they dealt with violating a rule, and untrustworthiness is not a word that is there, and it's a word that seems to be mandated to the hearing officer in order to justify any kind of reprimand.

### [T50]

As to his failure to answer Question XII, Part D, in a candid fashion, respondent testified:

A. Well, once again, taking the entire scope of the thing, and the light within which I was operating, I really—I read the question and I see on the copy that was provided my underlining, which is the way I've taken tests since the beginning. I underline the key issues, and deal with those, and I'd never been an attorney, I was never a professional, I never held a public office and then I think that trying, of course, to go back ten years, and trying to rationalize the thinking, I do understand that it was wrong, it was an error in judgment, but I am trying to now figure it out. I see I underlined 'in such capacity,' and if that is not restrictive language from the perspective of a law student and not from the perspective of an attorney that's been in practice for 10 years, but here I saw a question that tells me have I been an attorney,

---

[2] T refers to the transcript of the DEC hearing of June 5, 1991.

have I been a professional, have I held a public office, and then it limits itself to in such capacity, and that's the best answer I can tell you why I answered no, at the time.

[T51–52]

Respondent contended that he had answered that question in good faith, under the reasonable interpretation that the phrase "any other profession" did not encompass the occupation of a real estate broker. In fact, he added, because he was unsure of whether real estate brokers were included in that term, he had sought the advice of a seasoned attorney, who agreed with his interpretation. He had also relied on the language of *N.J.S.A.* § 14A:17–3 of the Professional Service Corporation Act of New Jersey, which makes no reference to the occupation of a real estate broker among the professions enumerated therein. Lastly, respondent testified, he relied on the fact that "no professional board for real estate brokers is listed under the jurisdiction of the New Jersey Division of Consumer Affairs as other professional boards are." Answer at 5.

Respondent also pointed to his disclosure of the disciplinary proceedings on the application to the New York bar to show no culpable intent on his part. He attempted to justify the disparity in his answers on both applications by claiming that "New York asked the question, and New Jersey did not." T43.

Respondent was asked whether he now believes that he should have expanded the scope of the questions:

Q. Now, again this may be repetitious, but I think we ought to be clear, before I leave this subject. As you look back at this, and given the general instruction at the beginning of this application, do you believe that you should have gone beyond the narrow scope of the question, and set forth those proceedings before the Department of State in answer to those questions?

A. Well, one of the benefits of sitting here after practicing law as I have, is that obviously one learns the concept of a duty of candor, and learns the golden rule with respect to that, which is when in doubt disclose. That was not something I knew as a law student certainly. I understand that I am responsible for it, and if you're asking me today would I answer differently, the answer is clearly yes. I believe that the error in judgment was clearly to not have taken sufficient account of the spirit of the instruction, which I can see today requires far more than the question asked. And I think that the answer is that the instruction or the spirit of that instruction is what controls

the mandate or the requirement of an applicant completing this application. I made the mistake of over-emphasizing the precise language of the question and that was wrong.

[T52–53]

At the conclusion of the DEC hearing, the panel found that respondent had "knowingly failed to fully respond to the questions set forth in the application," in violation of *DR* 1–102(A)(4) and *DR* 1–101(A).[3]  The panel recommended that, "[t]aking into consideration the eight years without incident that respondent has maintained his New Jersey license ... moderate sanctions should be imposed."  Hearing Panel Report at 5.

## CONCLUSION AND RECOMMENDATION

Upon a *de novo* review of the record, the Board is satisfied that the DEC's conclusion that respondent's conduct was unethical is fully supported by clear and convincing evidence.

Like the DEC, the Board finds that respondent knowingly omitted material information from the Committee on Character. It is obvious from the record that respondent strained to arrive at a literal interpretation that best served his own interest.  His construction of the words "civil proceeding" and "profession," to name a few, violated the letter and the spirit of the document.  His contention that his disclosure of the proceedings on the New York application demonstrates no intent to conceal that material information from the New Jersey authorities is simply not believable.  He disclosed the information on the New York form not because candor was his creed, but because he found no way to keep the information under cover.  By distorting the words on the New Jersey application, however, he felt no duty whatsoever to divulge crucial facts that bore directly

---

[3] *DR* 1–102(A)(4) provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.  *DR* 1–101(A) reads as follows: "A lawyer is subject to discipline if he has made a materially false statement in, or if he has deliberately failed to disclose a material fact requested in connection with his application for admission to the bar."

on his character. If, instead of expending great efforts in researching statutes and directories of professional boards, respondent had sought guidance from the Committee on Character, his misconception about the sort of information required would have been easily dispelled. In the end, however, prudence and candor lost out to self-serving motives. The Board cannot but conclude that respondent acted with knowledge and deliberation.

There are two categories of cases dealing with the misrepresentation of material facts on bar applications: those where the candidate's lie is detected before admission, in which case the Committee on Character does not certify the applicant's fitness to practice law, and those where the falsehood is uncovered after the candidate has been admitted to the profession, in which case the attorney's license to practice is revoked, barring special and compelling circumstances.

On two recent occasions, the Court reviewed conduct falling within the latter category. In one case, the Court revoked the attorney's license to practice law; in the other case, the Court suspended the conditional revocation of the attorney's license for lying on the bar application, suspended a one-year suspension for his representation of parties with conflicting interests, and imposed a public reprimand for giving a false answer on an application to purchase a weapon.

In the first case, *In re Scavone*, 106 *N.J.* 542, 524 *A.*2d 813 (1987), the attorney, while a law student at the University of Pennsylvania, altered his law school transcript to show that, in his first year, he had received three "excellents" and five "goods," whereas his true grades had been two "goods" and six "qualifieds." He submitted the altered transcripts to two New York law firms that were conducting on-campus recruiting for summer jobs. In addition, he falsified his resumé to reflect that he had received a higher LSAT score. After the law school administration found out his misrepresentations, he was given a chance to either withdraw or face expulsion. He then

signed an agreement with the law school in October 1980, providing that, in exchange for the school's forbearance from bringing a disciplinary proceeding against him, he would withdraw from the school. The charges contained in the agreement were that the attorney had altered his transcript and falsified his resumé and, additionally, knowingly and deliberately misrepresented, during the law school admission process, that he was a minority student.

Thereafter, the attorney was able to obtain enrollment at the St. Louis University School of Law, which was fully aware of his prior misdeeds. He graduated from St. Louis University in May 1984. In connection with his application for admission to the New Jersey bar, he signed a certified statement of candidate, denying that he had ever been disciplined, reprimanded, suspended, expelled or asked to resign from any educational institution. Although the Committee on Character received a document from St. Louis University, indicating that the attorney had been the subject of disciplinary action when he attended the University of Pennsylvania, the document was apparently misplaced by the Committee on Character's administrative office. In October 1984, the attorney was informed by the Committee that he would not be certified for admission to the bar, if the required information was not received. The attorney then sent a letter to the Dean of St. Louis University requesting that the documents be sent again. On October 22, 1984, the Committee on Character certified that the attorney was fit to be a member of the bar. At that time, he assumed the Dean of St. Louis University had sent in all the information.

In February 1987, the Committee on Character informed the attorney that his bar admission file was under review as a result of disclosed evidence attempting to show that he had failed to provide information that reflected adversely on his character. At the committee hearing, the attorney vigorously maintained that his negative answer to the question asking whether he had ever been disciplined, reprimanded, suspended,

expelled or asked to resign, was correct. He contended that his had been a voluntary withdrawal from the University of Pennsylvania, which would have initiated disciplinary action against him, if he had not withdrawn therefrom. The attorney insisted that his answer had not been an effort to deceive the committee and that he fully anticipated that, upon receipt of the information from St. Louis University, the committee would hold a hearing regarding his character. Because he was certain that St. Louis University would provide the adverse information to New Jersey, he did not submit a brief explanation or signal his answer to the question with an asterisk.

The attorney showed no remorse for his conduct and did not indicate that, in retrospect, he would have answered that question differently.

The Board found that the attorney's conduct had "demonstrated a cavalier and self-centered approach toward the truth." In the Board's view, the attorney had answered negatively with the hope that his background would escape detection. Under the circumstances, the Board recommended that the attorney's license to practice law be revoked. The Board reasoned that the revocation of the license would warn future bar applicants of the need to be absolutely candid when seeking admission to the profession. The Board specifically did not recommend disbarment, concluding that the attorney had never been properly admitted to the bar because he had entered the legal profession by subterfuge.

The Court agreed with and adopted the Board's factual findings. In revoking the attorney's license to practice law, the Court concluded that he was not fit to practice law because of his deliberate concealment of material facts from the Committee on Character. The Court pointed out that "candor and honesty are a lawyer's stock and trade. Truth is not a matter of convenience. Sometimes lawyers may find it inconvenient, embarrassing or painful to tell the truth. Nowhere is this more important than when an applicant applies for admission to the

bar." *Id.* at 553, 524 *A.*2d 813. The Court noted that the attorney's inability to tell the truth about himself demonstrated a lack of good moral character and unfitness to practice law. The Court was particularly troubled by the fact that the attorney had not rehabilitated himself. Nevertheless, the Court did not foreclose the possibility that, at some future time, the attorney might be able to demonstrate his fitness to practice law.

In another case, *In re Kotok,* 108 *N.J.* 314, 528 *A.*2d 1307 (1987), the Court did not revoke the attorney's license to.practice law but, rather, suspended the conditional revocation of the attorney's license because of the unique circumstances present therein. The attorney had exhibited unethical conduct in three separate matters. In the first, the attorney impermissibly engaged in a conflict of interest by representing two parties in a real estate transaction, without making proper disclosures to them about their rights and obligations. As a result of not having been fully informed as to their interests or having had independent counsel, his clients suffered serious adverse financial consequences. In another matter, the attorney, in his certified statement in connection with his application for admission to the bar, falsely described a criminal offense for which he had been convicted. Instead of disclosing his guilty plea to a disorderly persons charge of carrying a weapon with intent to commit an assault, the attorney falsely stated that he had been convicted of a disorderly persons offense of "possession of a weapon without a permit." He also deliberately misquoted a remark by the sentencing court. The Supreme Court noted that, because the attorney had already been admitted to the bar, the appropriate discipline would be to revoke his license to practice law. In a third matter, the attorney, then a municipal court judge, applied for a permit to purchase a handgun. In reply to a question on the application form asking whether the attorney had ever been a juvenile or disorderly person, the attorney wrote "yes." He listed the offense as "possession

without a permit," instead of "possession of weapon with intent to assault." To the question whether he had ever been convicted of a crime, the attorney answered "no." His application was approved by the municipal police chief. The Court concluded that the attorney had given a knowingly false answer in completing the application to purchase a weapon, although not with an obvious purpose to mislead. The Court noted that, ordinarily, that ethics offense would merit the imposition of a public reprimand.

In assessing the appropriate measure of discipline for the attorney's conduct in the first two matters (the conflict of interest matter and the bar application matter), the Court considered that the attorney had no disciplinary history since his admission to the bar in 1977; that the ethics offenses had taken place almost ten years before, when the attorney had just entered the legal profession; that, in the intervening years, he had gained professional experience, skill and understanding; and that he had achieved a commendable level of professional competence and recognition, as shown by his appointment as a municipal court judge. Reasoning that the imposition of a suspension or a license revocation would be contrary to the rehabilitative goals of discipline, the Court concluded that a probationary sanction was appropriate. Accordingly, the Court suspended the imposition of the one-year suspension and the conditional revocation of the attorney's license and placed the attorney on probation for one year, subject to his performance of legal services of a community nature. With regard to the third violation, the Court properly noted that, because the transgression had occurred in 1984, the considerations of remoteness did not justify the modification of the appropriate discipline. The Court, thus, imposed a public reprimand for that offense.

Here, too, there are compelling circumstances militating against the revocation of respondent's license. Eight years have intervened since respondent's ethics transgression, with

no pending disciplinary charges against him in the interim. In this period of time, he has acquired professional knowledge and experience. In the Board's view, to revoke his license would not advance the goals and purposes of the attorney disciplinary system. The Board also noted that respondent recognized his mistake and is now fully cognizant of a lawyer's duty of candor. In addition, the Board gave consideration to the DEC's recommendation that moderate sanctions be imposed because of the passage of time.

In view of the foregoing, a majority of the Board recommends that the revocation of respondent's license be stayed for a period of six months to afford him the opportunity to re-apply for admission to the bar, at which time the Committee on Character will evaluate his fitness to practice law. Two members would have revoked respondent's license. Two members did not participate.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for administrative costs.

By: /s/Raymond R. Trombadore  
Raymond R. Trombadore  
Chair  
Disciplinary Review Board

Dated: 5/26/1992