488 S.E.2d 864

**In the Matter of Kenneth L. EDWARDS, Respondent.**

**No. 24660.**

Supreme Court of South Carolina.

Heard April 2, 1997.
Decided Aug. 4, 1997.

Russell Brown, Charleston, for Respondent.

Attorney General Charles Molony Condon, Senior Assistant Attorney General James G. Bogle, Jr., Columbia, for Complainant.

PER CURIAM:

In this attorney disciplinary matter, the Hearing Panel ("Panel") and Executive Committee ("Committee") found Edwards committed misconduct in connection with: (1) several personal bankruptcy filings in which he represented himself or in which he assisted his lawyer; and (2) two of the bar

applications he submitted to the Committee on Character and Fitness. Specifically, the Panel and Committee found that Edwards committed misconduct by failing to appear for a 2004 examination [1] and for a civil contempt hearing; in transferring certain property to his parents during the pendency of his Chapter 13 case and without the permission of the Bankruptcy Court; and in failing to amend his own filings to keep his address updated. The Panel and Committee did not conclude, however, that Edwards' actions in the bankruptcies constituted intentional abuse of the bankruptcy system. Finally, the Panel and Committee found Edwards had failed to reveal on his bar applications the existence of a lawsuit and, later, a judgment, against him.

After considering its findings of misconduct and Edwards' prior disciplinary sanctions, the Panel recommended he receive a six-month suspension and be required to attend all ethics CLEs offered by the South Carolina Bar for two years. Opining that Edwards "has no appreciation for the ethical practice of law," the Committee recommended, by a vote of five to two, that Edwards be disbarred. The two dissenting members of the Committee voted for imposition of an indefinite suspension.

We have considered the convoluted facts of this case and concur with the Panel and Committee's findings of misconduct. Additionally, we find that Edwards intentionally abused the bankruptcy system. After consideration of all pertinent facts and circumstances, we conclude an eighteen-month suspension is the appropriate sanction.

## *DISCIPLINARY VIOLATIONS*

### A. BANKRUPTCY MATTERS

The State alleges Edwards committed the following misconduct in relation to his bankruptcy filings: (1) intentional abuse of the bankruptcy system; (2) fraud and deceit in conveying

---

**1.** Rule 2004 of the Bankruptcy Rules empowers the bankruptcy court to order the examination of any person, including the debtor, for questioning relating to "the acts, conduct, or property or ... the liabilities and financial condition of the debtor, or ... any matter which may affect the administration of the debtor's estate, or ... the debtor's right to a discharge."

certain property to his parents; (3) inappropriate behavior in telling a process server there would be "bloodshed" over the bankruptcy and in threatening the bankruptcy trustee and his lawyer; and (4) failure to comply with orders of the bankruptcy court despite receiving notice of meeting dates and times. The Panel and Executive Committee found misconduct as to allegations (2) and (4), but not as to allegations (1) and (3). To determine the extent of Edwards' misconduct, a thorough review of the testimony and evidence presented at the Panel hearing is necessary.

## 1. FACTS

Edwards was not licensed to practice law until June 1, 1992. Many events relating to his bankruptcy filings occurred before that date. Therefore, conduct occurring before the date Edwards was admitted to the bar is not sanctionable.

On February 26, 1991, Charleston Joint Ventures obtained a judgment in state court [2] against Edwards in connection with the lease of business property at Citadel Mall. Edwards' motion for reconsideration was denied on August 20, 1991.

On November 8, 1991, Edwards transferred two properties ("the Kiawah Island properties") to his aunt and brother. The consideration for each transfer was $5.00.

Approximately two months later, on January 2, 1992, Edwards filed his first Chapter 13 Petition in the federal bankruptcy court. According to testimony presented at the disciplinary hearing, Edward Brown represented Edwards during this first Chapter 13 petition.

On August 26, 1992, Edwards transferred a piece of property ("the Bees Ferry Road property") to his parents, in contravention of the Bankruptcy Code. Brown testified that he advised Edwards to transfer this property. The rationale for the transfer was that the parents had an unrecorded mortgage on the Bees Ferry Road property anyway, and the transfer would allow the parents to be paid. Brown testified that he thought the trustee would agree that the transfer would be an acceptable way to dispose of the debt "outside the Plan."

---

**2.** This judgment was filed on March 11, 1991, and served on Edwards's attorney on March 14, 1991.

Ultimately, the first Chapter 13 Petition was dismissed by the bankruptcy court because Edwards failed to make certain required payments to the bankruptcy trustee. During a particular period, these payments were set as least as high as $1,658.00 per month, payable by Edwards to the trustee. Although Edwards obviously tried to make some of these payments, he fell behind and was unable to catch up. For that reason, the bankruptcy court dismissed the first Chapter 13 Petition on October 29, 1992.

On March 10, 1993, Charleston Joint Ventures, Edwards' judgment creditor, filed an action in state court seeking to have set aside the transfers of the two Kiawah Island properties to Edwards' brother and aunt. Less than two weeks later, on March 19, 1993, Edwards, acting *pro se*, filed a second Chapter 13 Petition. After a hearing held on May 20, 1993, the bankruptcy judge issued an Order on May 28, 1993 dismissing the second Chapter 13 Petition. The judge's Order dismissing the Petition stated:

[Edwards] has been a debtor in a previous Chapter 13 case pending within 180 days of the filing of the Petition herein. Further, [Edwards] has failed to show any change in circumstances arising subsequent to the dismissal of the previous action and has failed to offer any justification for his failure to comply with the previous Orders of this Court.

Further, this Court finds that the Petition of [Edwards] herein was filed in bad faith, for an improper purpose and in an attempt to abuse the bankruptcy system, in that the Petition was filed for the purpose of preventing, hindering, and delaying the legitimate collection efforts of Charleston Joint Venture, and without any intention of financial rehabilitation. Therefore, the Petition of [Edwards] is hereby dismissed with prejudice.

The bankruptcy judge had stated from the bench on May 20, 1993 that he would dismiss the Petition.

On May 24, 1993, four days before Edwards' second Chapter 13 Petition was dismissed, Edwards filed a Chapter 7 Petition. He listed his address on the Chapter 7 Petition as 82½ Spring Street, which at one point had been Edward Brown's office. Edwards occasionally worked and slept in that office.

On July 9, 1993, the first meeting of creditors was held in Edwards' Chapter 7. At the meeting, the trustee said he intended to investigate the transfers of the Kiawah Island properties and the Bees Ferry Road property. If the conveyances were fraudulent, the trustee planned to have them set aside. Shortly after the first meeting of creditors, Edwards had the case converted to a Chapter 11. The trustee successfully had the case reconverted to a Chapter 7 on September 14, 1993.

On October 4, 1993, the bankruptcy judge issued an Order requiring Edwards to be present to answer questions at a 2004 meeting to be held on November 10, 1993. On October 18, 1993, notice of the 2004 meeting was mailed to 82 1/2 Spring Street, Edwards' listed address.[3] Edwards did not show up for the 2004 meeting. He also had not shown up for a 341 meeting[4] scheduled for November 5, 1993.

On November 17, 1993, the bankruptcy court issued a Rule to Show Cause for Contempt. The Rule to Show Cause ordered Edwards to appear on December 13, 1993 at 11:00 a.m. to show why he should not be held in contempt for his failures to attend the 341 meeting and the 2004 meeting and for his abuse of bankruptcy procedures. Edwards was served by first class mail at 82 1/2 Spring Street. Personal service was also attempted, but was not effected before the meeting.

Edwards did not show up at the hearing on the Rule to Show Cause for Contempt. The bankruptcy judge rescheduled the hearing for 2:30 p.m. the same day and told the trustee's attorney to attempt personal service. Chris Mullen, a process server, finally served Edwards at 12:09 p.m. According to Mullen, Edwards got very angry and launched into a diatribe against the justice system. Edwards told Mullen he would not go to the hearing. Mullen said that Edwards said there would be "bloodshed" over this matter. Mullen testified to the bankruptcy court that Edwards threatened the bank-

---

3. Apparently the notice was sent by first class mail. Rule 2004(c) appears to require personal notice by subpoena as provided for in Rule 45 of the Federal Rules of Civil Procedure, but Edwards never raised defective service as a defense to his failure to appear.

4. 11 U.S.C. § 341 provides for a meeting of creditors. The bankruptcy debtor typically is required to attend this meeting.

ruptcy trustee and the trustee's lawyer. At the disciplinary hearing, however, Mullen claimed he should not have characterized Edwards' diatribe as "threatening" anyone.

On January 4, 1994, the bankruptcy judge issued a civil contempt order against Edwards for failure to appear at the 2004 examination. The Order did not address Edwards' failure to appear at the 341 meeting held on November 5, 1993, or Edwards' alleged abuse of the bankruptcy system. Finally, on January 10, 1994, the bankruptcy judge had United States Marshals take Edwards into custody, forcing Edwards to answer questions from the trustee and from creditors about Edwards' assets and the property transfers. The incident with Mullen, as well as the subsequent contempt order and the involvement of the United States Marshals, were reported in the Charleston Post & Courier.

## 2. DISCUSSION

The Panel and Executive Committee found misconduct in Edwards' (1) failure to appear for the 2004 examination and for the civil contempt hearing; (2) transfer of the Bees Ferry Road property to his parents during the pendency of his Chapter 13 case; and (3) failure to provide the bankruptcy court with an accurate address. They did not find, however, that there was clear and convincing evidence Edwards intentionally abused the bankruptcy system. Rather, they observed the evidence "equally suggests a newly admitted attorney's doubtful decision to represent himself in a specialized field leading to a misapplication of rules and filing rights." Additionally, they failed to find misconduct in Edwards' behavior toward the process server, but characterized Edwards' diatribe and comment regarding "bloodshed" as "[e]xpressions of frustration with the system," which, while "not . . . the best or most appropriate action," were not unethical. The Panel expressed reservations about Edwards' misconduct in failing to appear for the 2004 examination, because Rule 2004 appears to require personal service and Edwards was served by first class mail.[5]

We agree with the findings of misconduct by the Panel and Committee. We also find by clear and convincing evi-

---

5. *See* Note 3 *supra.*

dence that Edwards intentionally abused the bankruptcy system to hinder the legitimate collection efforts of Charleston Joint Ventures. Taken separately, Edwards' missteps might show nothing more than incompetence. When considered in their entirety, however, Edwards' actions compel the conclusion that he intentionally abused the bankruptcy system: Among other things, Edwards (1) displayed a complete disregard for the Bankruptcy Code's prohibition on fraudulent transfers; (2) took no care to provide the bankruptcy court with accurate information so that the court could give him notice of hearings and examinations at which his attendance was required; (3) refused to attend court proceedings even after personal service giving him notice of the hearings; (4) improperly filed a second Chapter 13 Petition after his first one was dismissed. These actions show Edwards' disregard for his responsibilities as a lawyer and as a bankruptcy debtor.

Edwards' actions violate many Rules of Professional Conduct, Rule 407, SCACR, including Rule 1.1 (duty to provide competent representation); Rule 1.3 (duty to act with reasonable diligence and promptness); Rule 3.4 (fairness to opposing party and counsel); Rule 8.4 (misconduct, including conduct involving fraud, deceit, or misrepresentation, or conduct prejudicial to the administration of justice). Edwards also violated several subsections of Paragraph 5 of the Rule on Disciplinary Procedure, Rule 413, SCACR,[6] which defines as misconduct "[a]cts or omissions by an attorney ... which violate ... the Rules of Professional Conduct," "[c]onduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating unfitness to practice law," and "[c]onduct demonstrating a lack of professional competence in the practice of law."

## B.   BAR APPLICATIONS

### 1.   FACTS

The findings of misconduct relating to Edwards' applications to the South Carolina bar concern two separate applica-

---

**6.**   Rule 413 has been completely revised, but the revised version of the rule applies to all complaints filed on or after January 1, 1997. The complaints against Edwards were filed prior to the effective date of revised Rule 413.

tions, filed by Edwards. Edwards filed the first application at issue on or about September 1, 1990.[7] Question 16 on that bar application asked for a list of all suits or judicial actions of any kind to which Edwards was a party. Edwards listed only his 1987 divorce. Question 20 of the same application asked whether there were any pending actions or suits, or any unsatisfied judgments or decrees against Edwards. Edwards answered this question negatively. Charleston Joint Ventures had sued Edwards on or about June 26, 1990, more than two months before Edwards filed his bar application with the South Carolina Supreme Court. Edwards testified he was not served with the Charleston Joint Ventures lawsuit until approximately August 1, 1990. Edwards failed the February 1991 bar examination.

On September 3, 1991, Edwards filed with the South Carolina Supreme Court a supplemental bar application so that he could take the February 1992 bar examination. Though filed on September 3, 1991, Edwards' application was signed and dated April 25, 1991. Question 7(i) of the Supplemental Bar Application asked whether there had been any change as far as civil suits or proceedings since his last bar application, and Edwards answered "no." Question 11 of the Supplemental Bar Application asked whether there were any material facts not disclosed "in this or prior Applications which should now be brought to the attention of the Committee on Character and Fitness." Edwards again answered "no."

Contrary to Edwards' representations on the supplemental bar application, there had been changes in the status of the "civil suits [and] proceedings" in which Edwards was involved. On February 26, 1991, a South Carolina circuit court judge had signed an order of judgment against Edwards in the Charleston Joint Venture lawsuit. The order of judgment was filed on March 11, 1991, and Edwards' lawyer was served with the order on March 14, 1991. Edwards moved for reconsideration on March 25, 1991, and an order denying the motion for reconsideration was signed by the court on August 20 and filed on August 21, 1991. That order was mailed to Edwards' attorneys on September 3, 1991, the same day Edwards'

---

7. This was an application to take the February 1991 bar examination.

Supplemental Bar Application was filed with the South Carolina Supreme Court.

In short, Edwards failed to disclose in his September 1990 bar application the existence of the Charleston Joint Ventures lawsuit against him. He failed to disclose in his September 1991 supplemental bar application Charleston Joint Ventures' judgment against him. The Panel found that Edwards "did in fact fail to disclose required information in his application for the South Carolina Bar," and the Executive Committee agreed with this finding. Edwards does not deny he omitted the Charleston Joint Ventures lawsuit and judgment from his bar applications, but argues that they did not constitute "material fact[s]" under Rule 8.1(a), Rule 407, SCACR.

## 2. DISCUSSION

We concur with the finding of the Panel and Committee that Edwards violated Rule 8.1. Rule 8.1(a) of South Carolina's Rules of Professional Conduct forbids bar applicants from "knowingly mak[ing]" false statements of material fact on the application form submitted to the Committee on Character and Fitness. The Comment to the rule explains that "if a person makes a material false statement in connection with an application for admission, it may be the basis for subsequent disciplinary action if the person is admitted." Rule 8.1(b) requires an applicant for admission to the bar to correct information known to create a misapprehension regarding its correctness or completeness.

Edwards' misrepresentations certainly were knowing. He himself testified that he was served with the Charleston Joint Ventures lawsuit in August 1990, a month before he filed his September 1990 bar application. One can only conclude Edwards was aware of the lawsuit when he filed his bar application. When Edwards filed his September 1991 bar application, the Charleston Joint Ventures judgment had already been entered against him and he had already moved for reconsideration of the judgment. He did not reveal the judgment on the application. Given the fact he had moved for reconsideration of the judgment, it strains belief for one to assume Edwards was *unaware* of the judgment.

Edwards does not seriously dispute that the misrepresentations were knowing. However, he suggests that the Charleston Joint Ventures lawsuit and judgment were not "material" facts, such that their omission would violate Rule 8.1. We disagree.

There are few published South Carolina disciplinary cases concerning misrepresentations in bar applications. *In re Elliott*, 268 S.C. 522, 235 S.E.2d 111 (1977) is the most notorious South Carolina case on this subject. There, Elliott provided false information regarding her place of birth, her past criminal record, and the high school and college she attended. Although she was not a college graduate, she held herself out as a graduate of Vassar College. The Court disbarred Elliott for this misconduct. Although South Carolina had not adopted the current Rules of Professional Conduct at the time of Elliott's misconduct, Elliott's false statements plainly were material.

Cases from other jurisdictions indicate that a failure to disclose lawsuits or judgments is material. In *In re Chandler*, 161 Ill.2d 459, 204 Ill.Dec. 249, 641 N.E.2d 473 (1994), the Supreme Court of Illinois found that a bar applicant's failure to give a correct social security number was material, as was her failure to supplement her bar application with information regarding a false loan application and a foreclosure action against her. In *In re Gouiran*, 130 N.J. 96, 613 A.2d 479 (1992), the New Jersey Supreme Court found that a bar applicant's failure to disclose disciplinary proceedings concerning a real estate license constituted a material misstatement. In *In re Redding*, 672 N.E.2d 76 (Ind.1996), the Indiana Supreme Court found that a bar applicant's failure to inform the Board of Law Examiners of a claim filed against her during the pendency of her application violated Rule 8.1(b). *See also In re Rosen*, 570 A.2d 728 (D.C.1989) (per curiam) (finding misconduct where lawyer failed to supplement Maryland bar application with information regarding civil lawsuits and disciplinary proceedings filed against him while Maryland application was pending); *cf. In re Application of Leff*, 127 Ariz. 62, 618 P.2d 232 (1980) (denying applicant admission to the bar partly because he failed to reveal his once declining to testify before federal grand jury); *Greene v. Committee of Bar Examiners*, 4 Cal.3d 189, 93 Cal.Rptr. 24, 480 P.2d 976

(1971)(denying applicant admission to the bar where he failed to reveal separate maintenance action brought by his former wife and declaratory judgment action he brought relating to validity of annulment); *In re Bar Admission of Gaylord,* 155 Wis.2d 816, 456 N.W.2d 590 (1990)(denying admission to the bar because, *inter alia,* applicant failed to disclose traffic charges and convictions). *See generally* Annotation, *Falsehoods, Misrepresentations, Impersonations, and Other Irresponsible Conduct as Bearing on Requisite Good Moral Character for Admission to Bar,* 30 A.L.R.4th 1020 (1984).

These cases show that a failure to reveal the existence of a lawsuit should *generally* be considered material. Although the fact of a lawsuit or judgment does not indicate an applicant's lack of fitness, the Committee on Character and Fitness should know of the judgment so that it may determine such issues as whether the underlying lawsuit involved any fraud or dishonesty by the bar applicant. Unless it knows of lawsuits and judgments, it cannot make these determinations. Consequently, misrepresentation regarding the existence or status of a lawsuit or a judgment is material. Edwards' actions violated not only Rule 8.1, but also Rule 8.4, a general prohibition on conduct involving fraud, deceit, or misrepresentation and on other conduct prejudicial to the administration of justice.

### SANCTION

Because lawyers' honesty is central to the effective functioning of our legal system and to public faith in the system, this Court imposes severe sanctions for misconduct involving dishonesty. In *In re Elliott,* 268 S.C. 522, 235 S.E.2d 111 (1977), the Court disbarred Gabrielle Ann Scott Elliott for making false representations on her bar application. In *In re Brooks,* 274 S.C. 601, 267 S.E.2d 74, *cert. denied,* 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980), the Court disbarred a lawyer who caused a false affidavit to be prepared and filed concerning criminal charges against him. *See also In re Iseman,* 290 S.C. 391, 350 S.E.2d 922 (1986)(imposing temporary suspension for attorney who knowingly submitted false CLE report). *But see In re Pridgen,* 288 S.C. 96, 341 S.E.2d 376 (1986)(imposing public reprimand for submitting

false CLE report); *In re Altman*, 287 S.C. 321, 338 S.E.2d 334 (1985)(imposing public reprimand on lawyer who misrepresented facts concerning registration for CLE seminar).

Edwards' dishonesty was less serious than that of Gabrielle Ann Scott Elliott but more extensive than that at issue in *Pridgen* and *Altman*. Edwards clearly lied on his bar application, which many jurisdictions have recognized as an extremely serious violation. *See, e.g. In re Chandler*, 161 Ill.2d 459, 204 Ill.Dec. 249, 641 N.E.2d 473 (imposing three year suspension for, *inter alia*, failing to disclose on bar application foreclosure action filed against her and fraudulent actions committed in obtaining loan); *In re Charos*, 585 N.E.2d 1334 (Ind.1992)(imposing one year suspension where attorney failed to disclose on his bar application an application to practice law in another state and his alleged role in a robbery); *Attorney Grievance Comm'n v. Joehl*, 335 Md. 83, 642 A.2d 194 (1994)(disbarring attorney who failed to disclose series of traffic offenses and charge of battery that was later nol prossed); *In re Warren*, 888 S.W.2d 334 (Mo.1994)(imposing six month suspension where, *inter alia*, lawyer failed to disclose on his bar application that he had failed the bar examination in another state); *In re Cherryhomes*, 115 N.M. 734, 858 P.2d 401 (1993)(imposing indefinite suspension where lawyer, *inter alia*, forged a physician's signature certifying his mental and physical health on the bar application for another state); *Columbus Bar Ass'n v. Ewing*, 75 Ohio St.3d 244, 661 N.E.2d 1109 (1996)(imposing indefinite suspension where lawyer failed to disclose on his bar application that he had possessed a real estate license and that it had been suspended). Additionally, Edwards failed to furnish the bankruptcy court with accurate information and transferred property to his parents in an apparent attempt to defraud a creditor.

We also note that Edwards has committed professional misconduct in the past. In a judicial disciplinary matter, Edwards received a public reprimand for acting in a manner that erodes public confidence in the integrity and impartiality of the judiciary. *See In re Edwards*, 319 S.C. 57, 459 S.E.2d 837 (1995). Specifically, Edwards was found to have misused his authority as a judge for personal gain in issuing a bench warrant for the arrest of a process server who had served him with a summons and complaint. The Court found that the

process server had served Edwards without any disturbance or disruption of the magistrate's court and that, therefore, Edwards had no cause to issue the bench warrant. Although we are not punishing Edwards a second time for this misconduct, the incident reinforces our current view that Edwards exhibits a cavalier attitude toward the legal system and toward his responsibilities to it.

After considering the scope and nature of the misconduct in this case, we conclude an eighteen month suspension is an appropriate sanction. Edwards shall file, within fifteen (15) days of this opinion, an affidavit with the clerk of this Court stating he has complied with Paragraph 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**